C. Alex Naegele (SBN 255887)
C. ALEX NAEGELE,
A PROFESSIONAL LAW CORPORATION
95 South Market Street, Suite 300
San Jose, CA, 95113
Telephone: (408) 995-3224
Facsimile: (408) 890-4645
Email: alex@canlawcorp.com

Nancy Weng (SBN 251215)
TSAO-WU & YEE, LLP
31 North 2nd Street, Suite 260
San Jose, CA, 95113
Telephone: (415) 777-1688
Facsimile: (415) 777-2298
Email: nweng@tsaoyee.com

Attorneys for Plaintiff
LAURA GENS

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>LAURA GENS,<br><br>      Debtor.<br>_____<br><br>LAURA GENS,<br><br>      Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, N.A.,<br><br>      Defendant.<br>_____ | BK Case No. 15-53562-SLJ<br><br>Chapter 7<br><br>Adv. Pro. No. _____<br><br><br>**COMPLAINT FOR**<br><br>  **1. DETERMINATION OF VALIDITY**<br>     **OF CLAIM – 11 U.S.C. § 502**<br>  **2. DETERMINATION OF VALIDITY**<br>     **OF LIEN – 11 U.S.C. § 506**<br>  **3. VIOLATION OF BUS. & PROFS.**<br>     **CODE SECTION 17200, *ET SEQ.***<br>  **4. UNJUST ENRICHMENT**<br>  **5. ACCOUNTING**<br>  **6. INJUNCTION**<br><br><br>**JURY TRIAL DEMANDED** |

*Gens v. Wells Fargo Bank, N.A.*                     Complaint

1      LAURA GENS (hereinafter "Plaintiff") sues WELLS FARGO BANK, N.A. ("hereinafter

2  "WELLS FARGO") for declaratory relief and for violation of the California Business & Professions

3  Code section 17200 *et seq*. Plaintiff also seeks restitution of mortgage payments improperly

4  collected by Wells Fargo on behalf of itself and an accounting to determine the amount of

5  reimbursement, as well as the true and correct amount of Wells Fargo's claim in Laura Gens's

6  bankruptcy case.

7      **A.   JURISDICTION AND VENUE**

8      This is an adversary proceeding brought under 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(K),

9  157(b)(2)(O), 157(c), 157(e),  11 U.S.C. §§ 502(b)(1), (b)(2), (d), (e),(j), 11 U.S.C. § 506, and

10  Federal Rules of Bankruptcy Procedure 3007, 3008 and 7001 et seq.

11      The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

12  1334(b).

13      Pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7008, Plaintiff states that she

14  does not consent to entry of final orders or judgment by the bankruptcy court in this adversary

15  proceeding.   Plaintiff further states that, pursuant to FRBP 9015 as it incorporates Federal Rule of

16  Civil Procedure 38, Plaintiff request a jury trial on all matters for which a right to a jury trial is

17  available.  Plaintiff further states that, pursuant to FRBP 9015(b) and 28 U.S.C. § 157(e), Plaintiff

18  does not consent to proceeding with the jury trial in bankruptcy court and request that the jury trial

19  be conducted in district court.

20      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

21      **B.   OVERVIEW**

22      On November 17, 2006, Plaintiff executed a Deed of Trust and Adjustable Rate Note "Pick-

23  A-Payment Loan".  This loan product into which Plaintiff was steered is a predatory loan having

24  onerous terms. The original lender and loan servicer was World Savings Bank FSB. Golden West

25  Financial Corporation was the parent company of World Savings Bank, FSB. Golden West Savings

26  Association Service Company was the trustee under Plaintiffs' deed of trust.

27      Plaintiff's mortgage loan was sold to the WORLD SAVINGS REMIC 27 TRUST,

28  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 27 ("WSR 27 Trust") on or before the

*Gens v. Wells Fargo Bank, N.A.*                                                    Complaint

1   Trust's Closing Date of December 26, 2006. The Bank of New York Mellon ("BNYM") serves as

2   trustee for the Trust.

3       This case involves the notorious pick-a-pay negative amortization loan, the loan product in

4   which Plaintiff was placed by World Savings Bank, FSB, Defendant WELLS FARGO's purported

5   predecessor- in- interest. The pick-a-pay loan product is the quintessential predatory loan product

6   which played a significant role in the collapse of the California housing market. The OCC has

7   opined on what it characterizes as the touchstone of predatory lending, *i.e.*, where the lender fails

8   to determine whether a borrower can reasonably be expected to repay the loan from resources

9   *other than* the collateral in the mortgaged property. O.C.C. Policy Letter AL2003-2.

10       Under pressure to provide relief to the victims of the predatory pick-a-pay loan, in 2010,

11   WELLS FARGO entered into an Assurance Agreement with then California Attorney General

12   Edmund "Jerry" Brown in which the Bank promised to pay $2 billion worth of loan modifications to

13   14, 900 homeowners who had pick-a-pay loans. The Attorney General's Office found that such

14   loans became notorious during the housing meltdown because payments start low- at levels

15   insufficient to cover the monthly interest owed, and the unpaid interest is added to the loan balance.

16   The loan amounts increase dramatically over time soaring to unaffordable levels for the homeowner

17   significantly increasing the risk of foreclosure for the struggling homeowner. *See* article in

18   CNNMoney by Aaron Smith, dated December 12, 2010 which may be accessed at

19   www.money.cnn.com/2010/12/21/real_estate/wells_fargo_settlement/index.htm. Lawsuits have

20   been filed alleging that WELLS FARGO has reneged on its promise to restructure the pick-a-pay

21   loans. *See, e.g.*, article in the Los Angeles Times, dated December 11, 2012 by E. Scott Reichard

22   which may be accessed at www.articles.latimes.com/2012/dec/11/business/la-fi-wells-suit-

23   20121211. In fact, a class action was filed in the Northern District of California by homeowners

24   who were steered into a pick-a-pay loan. But Wells Fargo violated the provisions of the settlement

25   agreement reached by the parties resolving the law suit and the class representative brought suit to

26   enforce the terms of the settlement. *See In re Wachovia Corporation "Pick-A-Payment" Mortgage*

27   *Marketing and Sales Practices Litigation*, Case No. 5:09-md-02015-RS.

28       Wells Fargo has refused to modify the onerous terms of Plaintiff's insidious pick-a-pay loan.

*Gens v. Wells Fargo Bank, N.A.*                           Complaint

1    Instead of working with Plaintiff to make her mortgage loan more affordable, Wells Fargo has

2    chosen to pursue a sale of her property in the context of pending bankruptcy proceedings.

3    **C.    PLAINTIFF'S BANKRUPTCY PROCEEDING**

4       On November 11, 2015, Laura Gens, the Plaintiff in the instant action, filed for Chapter 11

5    bankruptcy reorganization. The bankruptcy proceeding is assigned Case No. 15-bk-53562-SLJ. On

6    November 25, 2015, Gens filed a plan of reorganization and disclosure statement. As Gens

7    previously had sought bankruptcy protection, the bankruptcy automatic stay was not put in place

8    upon the bankruptcy filing. Therefore, on November 16, 2015, Ms. Gens filed a motion to impose

9    the automatic stay in the case. The bankruptcy court denied the Motion. Accordingly, any creditor

10   who wished to pursue collection remedies was free to do so after December 10, 2015. Creditors

11   include Wells Fargo, which falsely claims to hold the first lien on Laura Gens' primary residence

12   which is the Subject of the instant lawsuit.

13       However, Wells Fargo did not attempt to foreclose on the Subject Property but, instead, chose

14   to participate in the bankruptcy case for over one year. Gens proposed a total of four separate

15   Chapter 11 plans of reorganization during the bankruptcy case. Wells Fargo filed comments and

16   objections as to each plan which were addressed and remedied in each subsequent plan.

17       The fourth Chapter 11 plan was accepted by enough creditors to warrant confirmation of the

18   plan.  However, the Court converted this case from a Chapter 11 reorganization to a Chapter 7

19   liquidation without allowing debtor Gens to submit evidence at a plan confirmation hearing

20   establishing that the plan is feasible.

21       The Chapter 7 bankruptcy trustee applied to retain the services of a real estate broker to

22   market the Subject Property for sale.  Debtor Gens opposed the application on the ground that there

23   are sufficient funds in the bankruptcy estate, without considering the sale value of the Subject

24   Property, to pay all unsecured creditors and to pay all administrative expenses. Gens contends that

25   the trustee is breaching her fiduciary duty by taking steps toward unnecessarily liquidating the

26   Subject Property.  Nevertheless, the Subject Property is currently being shown to prospective

27   buyers, and the trustee has filed a motion to sell the Subject Property with a hearing date of May 31,

28   2017.

*Gens v. Wells Fargo Bank, N.A.*                                                                                          Complaint

After the Chapter 7 trustee filed an application to hire a real estate broker to market the Subject Property for sale, Laura Gens retained the services of a forensic mortgage loan auditor to investigate the chain of title to the Subject Property. The auditor issued his report on April 3, 2017. The report establishes that Wells Fargo, in fact, is not a valid beneficiary under Gens' deed of trust and, therefore, has no claim of title to the Subject Property as a secured creditor or otherwise.

### D. **THE PARTIES**

1. Plaintiff resides at 4141 Old Trace Road, Palo Alto, CA 94306-3728. The property is the subject of this action (hereinafter "Property" or "Subject Property"). The Subject Property is Plaintiff's principle residence.

2. Defendant Wells Fargo Bank, N.A. is a nationally chartered bank organized under the laws of the United States with its main office located in Sioux Falls, South Dakota as designated in its Articles of Association. Wells Fargo holds itself out as servicer of Plaintiff's mortgage loan through Wells Fargo Home Mortgage, a division of Wells Fargo.

### E. **MATERIAL FACTS COMMON TO ALL COUNTS**

3. On November 17, 2006, Plaintiff executed a Deed of Trust and Adjustable Rate Note "Pick-A-Payment Loan". The original lender and loan servicer was World Savings Bank FSB and the trustee was Golden West Savings Association Service Company. A true and correct copy of the loan documents are attached hereto as **Exhibit "A"** and incorporated by reference as though fully set forth herein.

4. Golden West Financial Corporation was the parent company of World Savings Bank, FSB and Golden West Savings Association Service Company. On or about May 6, 2007, Wachovia Bank acquired Golden West Financial. The integration process, which included World Savings Bank, was completed in mid-2008. Wells Fargo Bank acquired Wachovia in the same year.

5. Shortly after Wachovia Bank acquired Golden West Financial, including its subsidiary company World Savings, Wachovia Mortgage became servicer of Plaintiff's mortgage loan.

6. After Wells Fargo Bank, N.A. acquired Wachovia in 2008, Wells Fargo Home Mortgage, a division of Wells Fargo, assumed the role of servicer of Plaintiff's loan.

5

*Gens v. Wells Fargo Bank, N.A.*                                                                 Complaint

7. Plaintiff's mortgage loan was sold to the WSR 27 Trust on or before the Trust's Closing Date of December 26, 2006. In its Form 10-K for June 30, 2006 (the Company's last Financial Statement for the Quarterly Period ending June 30, 2006), filed with the SEC, Golden West Financial states on Page 19, Table 3-Balance of Loans Receivable and Mortgage-backed Securities by Components- that Golden West Financial (through World Savings) securitized over $45.6 billion of their originated loans. A true and correct copy of Form 10-K for June 30, 2006 is attached hereto as **Exhibit "B"** and incorporated by reference as though fully set forth herein.

8. The terms and characteristics of Plaintiff's pick-a-pay mortgage loan are all within the parameters of the securitized mortgage loans in the WSR 27 Trust. Those terms and characteristics include the principal loan amount of $1,620,000,00, 30-year adjustable pick-a-pay note term with a negative amortization maximum of 125%, loan origination on November 17, 2006, loan maturity date on 12/15/2035, initial interest rate of 7.347%, periodic rate cap of 7.500%, interest rate limit of 11.950%, interest change date on 1/15/2007, payment change date on 1/15/2008, property type and geographic location. *See* Screenshots from the Bloomberg database relating to the WSR 27 Trust, true and correct copies of which are attached hereto as **Exhibit "C"** and incorporated by reference as though fully set forth herein.

9. Clearly, Plaintiff's loan was not among the assets acquired by Wells Fargo in 2008 when acquisition of Wachovia was completed. Therefore, Defendant Wells Fargo holds no beneficial interest in Plaintiff's loan and is not a real party in interest with authority to enforce the loan or to collect mortgage payments from Plaintiff.

10. The WSR 27 Trust is a Special Purpose Vehicle formed as a mortgage-backed securities trust with an election and continuing qualification as a real estate mortgage investment conduit ("REMIC") in accordance with the Internal Revenue Tax Code of 1986, as amended. Upon election and continuing qualification as a REMIC, the income of the trust, *i.e.*, the scheduled mortgagors' payments, is taxed only at the Certificate Holder's (investor's) level.

11. Pursuant to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true and "complete" sale between the parties in order to achieve bankruptcy remoteness. Upon formation

6

*Gens v. Wells Fargo Bank, N.A.*                                      Complaint

of the REMIC-qualified MBS Trust, the Depositor sells the pooled mortgage loans in exchange for the securities certificates issued by the trust. Each step of the "true sale" process must be supported by effective delivery and certification of acceptance of the receiving party of the endorsed mortgage note and assigned deed of trust, reflecting the complete intervening assignments and transfers of each mortgage loan from each assignor to the last assignee.

12. The Pooling and Servicing Agreement governing every securitization, in accordance with the requirements of the Tax Code of 1986, provides that only the Depositor, and no other entity, is permitted to make the final assignment and transfer of each mortgage loan to the REMIC MBS trust, and the assignment must be made as of the closing Date of the trust to maintain the favorable pass-through tax status of the trust entity. In addition, only performing qualified mortgage loans which are not in default may be placed into the REMIC MBS trust. Once the trust owns a mortgage loan, only the trustee of the MBS trust has the authority to foreclose, to appoint an agent to foreclose, to assign the deed of trust or substitute a trustee under the deed of trust.

13. The securitization of Plaintiff's mortgage loan is a transaction designed to comply with the aforementioned requirements of the Tax Code and the governing Pooling and Servicing Agreement which mandates the proper chain of endorsement of the mortgage Note and assignment of the Deed of Trust. Securitizations by World Savings were distinguished by the fact that the Bank assumed most of the roles of the participants in the securitization process. Specifically, World Savings served as loan originator, Master Servicer, Seller, Underwriter and Depositor. Therefore, the "true sale" required for bankruptcy remoteness occurred when World Savings FSB as loan originator and seller, concurrently acting as sponsor and depositor, sold Plaintiff's loan to BNYM in its capacity as trustee for the WSR 27 Trust.

14. However, a review of the Santa Clara County Recorder's Office reveals that Plaintiff's Deed of Trust has never been assigned from original lender World Savings to any entity, including BNYM as trustee for the WSR 27 Trust as required by the Trust documents. In addition, the copy of the mortgage Note was not endorsed to any entity, including BNYM, as trustee. Therefore, the required chain of title protocol required by the governing trust documents was not followed and the securitization of Plaintiff's mortgage failed.

7

*Gens v. Wells Fargo Bank, N.A.*                                                        Complaint

15.     Moreover, it is likely that all of the mortgage loans contributed to the WSR 27 Trust have been paid off by a pool insurance company or through credit enhancements or cross-collateralization. This means that the MBS trust has been fully paid for all of the mortgages contributed to the trust and that, therefore, none of the mortgagors, including Plaintiff, is in default. Therefore, BNYM, as trustee for the WSR 27 Trust, is not a real party in interest or "person entitled to enforce" Plaintiff's mortgage or to collect mortgage payments from her.

16.     Additionally, the deed of trust and note have become split rendering the deed of trust unenforceable.

17.     On August 23, 2007, Golden West Savings Association Service Co. recorded a Notice of Default ("NOD 1") against the Plaintiff. A true and correct copy of NOD 1 is attached hereto as **Exhibit "D"** and incorporated by reference as though fully set for herein. Golden West rescinded NOD 1 on December 3, 2007. A true and correct copy of the Notice of Rescission is attached hereto as **Exhibit "E"** and incorporated by reference as though fully set forth herein.

18.     On April 24, 2008, Golden West Savings Association Service Company recorded a second Notice of Default ("NOD 2") against the Plaintiffs on behalf Wachovia Bank FSB. A true and correct copy of NOD 2 is attached hereto as **Exhibit "F"** and incorporated by reference as though fully set forth herein. As World Savings, Wachovia's predecessor, had already alienated all interest it formerly held in Plaintiff's mortgage loan, it lacked authority to direct Golden West to issue NOD 2 against the Plaintiff. Accordingly, NOD 2 is fatally defective, null and void *ab initio*. Therefore, **there has been no default under the nonjudicial foreclosure statute!**

19.     On November 4, 2008, Golden West Savings Association Service Company recorded a Notice of Trustee's Sale ("NOTS 1) scheduling the foreclosure sale of Plaintiff's Property. The scheduled sale did not take place. A true and correct copy of NOTS 1 is attached hereto as **Exhibit "G"** and incorporated by reference as though fully set forth herein.

20.     On January 16, 2009, Cal-Western Reconveyance Corp., as attorney-in-fact for Wachovia Mortgage FSB f/k/a World Savings Bank FSB, recorded a Substitution of Trustee ("SOT 1") purporting to substitute itself for Golden West Savings Association Service Co. as the trustee under Plaintiff's deed of trust. As alleged with specificity hereinabove, in 2009, Wachovia was an

Case: 17-05045   Doc# 1   Filed: 05/12/17   Entered: 05/12/17 13:20:40   Page 8 of 22

1  invalid beneficiary without the power to substitute a trustee under Plaintiffs Deed of Trust and

2  Wachovia, now Wells Fargo, and BNYM were in clear violation of Section 2934a of the non-

3  judicial foreclosure statute. A true and correct copy of SOT 1 is attached hereto as **Exhibit "H"** and

4  incorporated by reference as though fully set forth herein.

5        21.    On February 19, 2010, Cal-Western recorded a Notice of Trustee's Sale ("NOTS 2")

6  scheduling a foreclosure sale of Plaintiff's Property for March 11, 2010.  The scheduled sale did not

7  take place. A true and correct copy of NOTS 2 is attached hereto as **Exhibit "I"** and incorporated

8  by reference as though fully set forth herein.   However, Plaintiff's loan was sold, for full loan value,

9  to the WSR 27 Trust in 2006.  Therefore, Defendant Wells Fargo, as successor to World Savings

10  and Wachovia, is not the beneficiary under Plaintiff's deed of trust. BNYM, as trustee for the WSR

11  27 Trust, likewise, is not a valid beneficiary as it never received an effective assignment of

12  Plaintiff's mortgage note during the securitization process.  In any event, BNYM never issued a

13  NOD against the Plaintiffs. As a result of the irrevocable break in the chain of title of Plaintiff's

14  loan, the current beneficiary is undocumented and unknown.  Accordingly, there exists a cloud on

15  the title to the Subject Property.

16        22.    Cal. Civ. Code Section 2924 (a)(1) provides that only the trustee, mortgagee or

17  beneficiary, or any of their authorized agents, may file a NOD. Section 2924(a)(1)(C) further

18  provides that the NOD must include a statement setting forth the nature of each breach actually

19  known to the beneficiary. Here, Defendant Wells Fargo was not a valid beneficiary when NOD 2

20  was issued against the Plaintiff. As NOD 2 was issued by an invalid foreclosing trustee, on behalf of

21  an invalid beneficiary, it is fatally defective, null and void *ab initio.*

22        23.    On July 11, 2012, Cal-Western issued a Notice of Trustee's Sale ("NOTS 3").  The

23  scheduled sale did not take place. A true and correct copy of the NOTS 3 is attached hereto as

24  **Exhibit "J"** and incorporated by reference as though fully set forth herein.

25        24.    On February 12, 2016, Aldridge Pite, LLP, as attorney-in-fact for Wells Fargo Bank,

26  N.A., the latter falsely purporting to be the beneficiary under Plaintiffs' deed of trust, attempted to

27  substitute Clear Recon Corp. in place of Cal-Western Reconveyance Corp. as trustee under

28  Plaintiffs' deed of trust ("SOT 2").  As Wells Fargo had no authority to direct Aldridge Pite to

9

*Gens v. Wells Fargo Bank, N.A.*                                                                Complaint

execute and record SOT 2, the document is null and void. A true and correct copy of SOT 2 is attached hereto as **Exhibit "K"** and incorporated by reference as though fully set forth herein.

25. Plaintiff was unaware of the foregoing defects in the chain of title to her mortgage loan until she retained the services of a forensic mortgage loan auditor and read his audit report which was issued on April 3, 2017. In fact, World Savings attempted to hide the fact that it securitized most of the mortgage loans it originated by securitizing them into private securitization transactions. Rule 144A of the Securities Act of 1933, as amended, provides that private securities need not be registered under the statute. For this reason, the documents governing private mortgage-backed securities trusts are not filed with the SEC and, thus, are not readily accessible to members of the public.

26. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the statute's provisions is required. *Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient notice of default is invalid).

27. As a result of the alienation of World Saving's beneficial interest under Plaintiff's deed of trust in 2006, when it sold Plaintiff's mortgage to the WSR 27 Trust, Defendant Wells Fargo did not succeed to World Savings' interest in the mortgage in 2008 as the loan was no longer among World Savings' assets. Therefore, Wells Fargo is not a real party in interest with standing to enforce Plaintiff's mortgage loan or to collect mortgage payments from her. Moreover, Wells Fargo is prohibited from enforcing Plaintiff's mortgage as a result of its egregious violations of California's non-judicial foreclosure which have deprived Plaintiff of her constitutional due process rights guaranteed under the United States and California constitutions.

## CAUSES OF ACTION

## COUNT I:  DETERMINATION OF VALIDITY CLAIM – 11 U.S.C. § 502

### (Against WELLS FARGO)

28. Plaintiff re-alleges and incorporates by this reference the allegations contained in the preceding paragraphs as though set forth fully herein.

29. This is an action for declaratory relief which is brought pursuant to C.C.P. §1060, which provides that any person interested under a written instrument or a contract who desires a

*Gens v. Wells Fargo Bank, N.A.*                                                    Complaint

declaration of his or her rights or duties with respect to another or in respect to property may, in the case of an actual controversy relating to the legal rights and duties of the parties, bring an original action in the court for a declaration of their rights or duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract, with the declaration having the force and effect of a final judgment and which may be had before there has been any breach of the obligation in respect to which the declaration is sought.

30.     Plaintiff is a "person" within the meaning and intent of C.C.P. §1060.

31.     There is an actual controversy, as Defendant Wells Fargo falsely claims to hold the first lien on Plaintiff's mortgage. See e.g., SOT 2 attached hereto as Exhibit "K". See also Proof of Claim (Claim 5-1) filed in Case No. 15-53562 on March 8, 2016, in which Wells Fargo falsely claims to hold a secured lien on the Subject Property in the amount of $2, 136, 529.31.  However, as explained with particularity, above, Wells Fargo never received effective assignment of Plaintiff's Note or DOT. Specifically, Plaintiff's mortgage loan was sold to the WSR 27 Trust in 2006. Accordingly, Plaintiff's mortgage loan was no longer among the assets of World Savings that Wells Fargo inherited as successor to Wachovia Mortgage f/k/a World Savings. Wells Fargo relies on SOT 2 and other land records recorded in the Santa Clara County Recorder's Office to support its contention that is a valid beneficiary with authority to collect mortgage payments from the Plaintiff and otherwise enforce the deed of trust. But, as the California Supreme Court has observed, "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security." Yvanova v. New Century Mortgage Corporation, 62 Cal. 4th 919, 2016 WL 639526 *11.

32.     Here, for the reasons set forth above, Wells Fargo does not hold a beneficial interest in Plaintiff's Deed of Trust and has no authority to exercise the power of sale under the deed of trust. Similarly, Wells Fargo, through its division Wells Fargo Home Mortgage, is not a valid servicer with authority to collect mortgage payments from the Plaintiff.  The pending Chapter 7 bankruptcy proceedings do not change that fact. Wells Fargo filed a fraudulent Proof of Claim in those proceedings falsely representing that it is the holder of the first lien on the Subject Property. As Wells Fargo, in fact, holds no interest in the Property whatsoever, the Subject Property is not part of

*Gens v. Wells Fargo Bank, N.A.*                                                    Complaint

the bankruptcy estate and the Property may not be sold to satisfy the claims of the unsecured creditors and to pay administrative expenses.

33.     In August 2007, a putative class action was filed in the Northern District of California titled Mandriguez v. World Savings, Inc., et al., Case No. 5:07-cv-04497-JF. Mandriguez was litigated for several years during which time the United States Judicial Panel on Multidistrict Litigation transferred the case to the Honorable Jeremy Fogel for coordinated pre-trial proceedings and coordination of numerous other "pick-a-payment" class actions and single-plaintiff actions. After extensive motion practice and the completion of briefing with respect to Plaintiffs' motion for class certification and the parties' cross-motions for summary judgment, the parties reached a settlement.  On December 16, 2010, following a hearing, the Court granted preliminary approval of the settlement, certified three classes for settlement purposes and appointed class representatives and class counsel.  See Order (1) Granting Final Approval of Class Action Settlement; (2) Addressing Objections; (3) Denying Marcella Rose's Motion to Intervene; (4) Approving Service Payments to Class Representatives; and (5) Awarding Attorneys' Fees and Costs filed on May 17, 2011 in Case No. 3:09-md-02015-RS ("5,17, 2011 Order"), ECF Dkt. No. 207 at 2.

34.     The three settlement classes consist of individuals, including Plaintiff Gens, who entered into "pick-a-payment" loans with World Savings between August 1, 2003 and December 31, 2008. Class A is comprised of borrowers who no longer hold their pick-a-pay loans and are not in default.  Class B consists of borrowers who still hold their pick-a-pay loans and are not in default and Class C consists of borrowers who still hold their loans and are in a default status. As Wells Fargo contends that it is a valid lienholder and loan servicer, Plaintiff Gens would fall within either Class B or Class C. Id. at 3.

35.     In In Re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation, Case No. 3:09-md-02015-RS, Plaintiffs, the mortgage settlement class and pick-pay mortgage victims, moved for an order finding that Defendant Wells Fargo breached the parties' 2011 final settlement agreement resolving the underlying litigation. The Agreement provides that Wells Fargo (and other defendants) would pay a total of $50 million to class members. Additionally, Wells Fargo was to implement a loan modification program to qualified Class C

Case: 17-05045    Doc# 1    Filed: 05/12/17    Entered: 05/12/17 13:20:40    Page 12 of 22

members and qualified Class B members who are in imminent default. Eligible class members first

would be considered for the federal Home Affordable Modification Program ("HAMP"). If a class

member does not qualify under HAMP or elects not to accept a HAMP modification, the member

was to be considered for Wells Fargo's new loan modification program, Mortgage Assistance

Program 2 ("MAP2R"). The goal of both the HAMP and MAP2R programs is to reduce a class

member's mortgage debt to income ("DTI") ratio to 31% or less. In order to accomplish this, Wells

Fargo was to apply a series of steps including waiver of accrued interest and other charges,

forgiveness of principal and reduction in interest rate. Once a DTI of 31% is reached, the loan was

to be converted to a fully-amortizing loan and the negative amortization feature would be

eliminated. 5/17/2011 Order at 3, 4. The loan modification programs under the Settlement

Agreement were to end in 2013. However, the loan modification period specified in the Agreement

was later extended in response to a number of motions filed by the plaintiffs to enforce the

agreement. See Order on Motion to Enforce Settlement, filed on April 15, 2015, Dkt. No. 682 at 2

n.1.

      36.     In moving to enforce the terms of the settlement agreement, plaintiffs contended that

Wells Fargo employs an inconsistent and improper standard to deny applications for loan

modification on the grounds that class members are not at imminent risk of default.[1] Wells Fargo

countered that it is invested with substantial discretion to develop and implement imminent default

standards and claims its policies are fully compliant with the Agreement. The district court

disagreed with Wells Fargo's position observing that "[w]hile the agreement affords Wells Fargo

some flexibility in crafting and applying its imminent default standards, its discretion is limited by

the plain terms of the settlement and federal loan modification guidelines incorporated therein."

Order on Motion to Enforce Settlement", ECF Dkt. No. 682 at 1. The Court noted that "[t]his is not

the first time plaintiffs have identified alleged deficiencies in Wells Fargo's imminent default

---

[1] The Agreement provides that Class C members, that is, those already in default are immediately eligible for loan modification review and Class B members are prospectively entitled to loan modification if they later defaulted on their loans or could demonstrate they are at imminent risk of default at any time during the period from December 18, 2010 until June 30, 2013. *See* Order on Motion to Enforce Settlement, *supra*, at 2. Settlement Class A includes borrowers who paid off their loans by selling their homes, by refinancing, or by other means. *See* 5/17/2011 Order at 2,3.

Case: 17-05045   Doc# 1   Filed: 05/12/17   Entered: 05/12/17 13:20:40   Page 13 of 22

*Gens v. Wells Fargo Bank, N.A.*                                         Complaint

procedures. In two prior orders- one issued on May 8, 2014 ("May Order") and the other on June 26, 2014 ("June Order")- this court addressed related claims brought by the plaintiffs." Id. at 2.

37.     In reviewing plaintiffs' Motion to Enforce the Agreement, the Court determined that Wells Fargo apparently had violated the agreement by failing to follow HAMP guidelines in place at the time which require that, when making an imminent default determination, the loan servicer must take into consideration more than the borrower's mortgage expense to income ratio. The Court determined that HAMP guidelines also require a loan servicer to consider the borrower's non-mortgage obligations and living expenses. These obligations and expenses include the borrower's financial financial condition, liquid assets, liabilities, combined monthly income from wages and all other identified sources of income, monthly obligations including personal debts, revolving accounts, installment loans, as well as a reasonable allowance for living expenses such as food and utilities. The Court ordered Wells Fargo to submit a brief clarifying its "inscrutable" financial hardship test so that it could determine whether plaintiffs are entitled to relief based on Wells Fargo's apparent failure to consider specific non-mortgage expenses in accordance with HAMP guidance. Order on Motion to Enforce Settlement at 9-11.

38.     The Court also determined that Wells Fargo breached the agreement by defining DTI, in connection with an imminent default determination, based on a borrower's fully-amortizing payment, regardless of whether these expenses are included in the borrower's current payment only with regard to HAMP modifications. The Court determined that this method of DTI applied equally to MAP2R modification applicants as the goal of both the HAMP and MAP2R programs is to reduce a borrower's DTI to no greater than 31%. Wells Fargo had been determining the DTI of its MAP2R applicants based on the minimum monthly payment. Order at 18. Finally, the Court found that Wells Fargo breached the Agreement by failing to establish and apply equally across the class uniform written standards for it "Major Change of Circumstances" hardship test. Id. 2

---

[2] Apparently, the parties' obligations under the 2011 Settlement Agreement finally were resolved via a Joint Stipulation and an order approving the stipulation filed on December 7, 2015, ECF Dkt. No. 729. Pursuant to the Joint Stipulation, certain eligible class members, which include Plaintiff Gens, who did not receive notification of the benefits afforded under the Settlement Agreement and/or the Joint Stipulation, were to be afforded the opportunity to apply or re-apply for a loan modification. Stipulation, ¶¶16, 24. The parties entrusted notification of the opportunity to

(continued . . . )

Case: 17-05045    Doc# 1    Filed: 05/12/17    Entered: 05/12/17 13:20:40    Page 14 of 22

39. Plaintiff in the instant action has been subjected to the same inequitable and unfair treatment by Defendant Wells Fargo as the plaintiffs in the class action. In fact, is among the class members covered by the 2011 Settlement Agreement. However, she was never notified of the class action or of the settlement and the benefits to which she is entitled thereunder. It is Wells Fargo, and not the Plaintiff, which is the bad actor. Wells Fargo has demonstrated a pattern of illegal conduct with respect to its obligation to modify the onerous terms of the insidious pick-a-pay loan.

40. C.C.P. §1062 provides that the remedies provided by the chapter are cumulative and shall not be construed as restricting any remedy, and further that under this chapter shall not preclude any party from obtaining additional relief based on the same facts.

41. C.P. §1062.3 provides that actions brought under this chapter shall be set for trial at the earliest possible date and shall take the precedence over all other cases except older matters of the same character and matters to which special precedence may be given by law.

42. In that Wells Fargo falsely claims to hold a beneficial interest in Plaintiff's loan and the right to collect mortgage payments from the Plaintiff, mortgage payments have been collected from the Plaintiff under false pretenses. Moreover, any future foreclosure activity by Wells Fargo will violate California's nonjudicial foreclosure statute. Plaintiff requires a judicial determination regarding the rights and obligations of the parties to redress past illegal conduct and to prevent future illegal conduct and harm by the Defendant.

WHEREFORE, Plaintiff requests that this Court take jurisdiction of this claim and issue an Order and Decree that:

(a) Wells Fargo has no legal rights in either the NOTE or the Deed of Trust;

(b) Wells Fargo has no right to collect mortgage payments from the Plaintiff;

(c) The Chapter 7 Trustee in the pending bankruptcy case is prohibited from paying Wells Fargo any amounts on its proof of claims from the sale of the Subject Property until this lawsuit can be resolved;

(d) Wells Fargo must engage in good faith loan modification negotiations with the

_____
( . . . continued)
reapply for a loan modification to a third party administrator. Stipulation, ¶20.

Case: 17-05045   Doc# 1   Filed: 05/12/17   Entered: 05/12/17 13:20:40   Page 15 of 22

*Gens v. Wells Fargo Bank, N.A.*                                                    Complaint

Plaintiff over which the Court will retain continuing jurisdiction until a fair and just modification is fully negotiated under the bankruptcy court's MMM program.

## COUNT II: DETERMINATION OF VALIDITY OF LIEN - 11 U.S.C. § 506

### (Against WELLS FARGO)

43.     Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

44.     Plaintiff is, and at all times herein mentioned was, owner of the real property located at 4141 Old Trace Road, Palo Alto, CA 94306-3728; APN 175-20-054.  The full legal description is attached hereto as Exhibit "L."

45.     Defendant Wells Fargo falsely claims to hold the beneficial interest in Plaintiff's deed of trust and authority to exercise the power of sale thereunder. See e.g., SOT 2 attached hereto as Exhibit "K and Proof of Claim (Claim 5-1) filed in Case No. 15-53562.  However, as explained with particularity above, Wells Fargo is not a legitimate beneficiary. Defendant Wells Fargo's claims are adverse to Plaintiff's because Wells Fargo cannot prove any interest in the NOTE or DOT or that the NOTE is secured by the DOT, as well as for the reasons set forth in the causes of action supra and infra. As such, Wells Fargo has no right, title, lien, or interest in the Subject Property.

46.     Plaintiff seeks to quiet title against the claims of Defendant Wells Fargo and all persons, known and unknown, claiming any legal or equitable right, title, estate, lien, or adverse interest in the Subject Property as of the date the Complaint was filed (Cal. Code Civ. Proc. §760.020).  Defendant Wells Fargo claims an interest in the property adverse to Plaintiff's herein. However, the claims of said Defendant are without any right whatsoever, and said Defendant has no legal or equitable right, claim, or interest in the property.

47.     Plaintiff's title derives from the original loan documents (Exhibit "A") and is superior to that of Wells Fargo because the Bank has no interest whatever in Plaintiff's mortgage loan.

48.      Plaintiff  therefore seeks a declaration that the title to the Subject Property is vested in Plaintiff, free and clear of encumbrances in favor of Defendant Wells Fargo and all persons known and unknown, and that Wells Fargo and persons known and unknown, and each of them, be declared to have no estate, right, title, lien or interest in the Subject Property and that said Defendant

Case: 17-05045    Doc# 1    Filed: 05/12/17    Entered: 05/12/17 13:20:40    Page 16 of 22

1  and persons known and unknown, and each of them, be forever enjoined from asserting any estate,

2  right, title, lien or interest in the Subject Property adverse to Plaintiff herein. Plaintiff seeks an

3  order from this court instructing the clerk of the court to execute in recordable form a deed of

4  reconveyance to Plaintiff's Property.

5       49.    Plaintiff is not required to tender any outstanding mortgage debt because Wells Fargo

6  lacks standing to enforce the mortgage loan and the threatened foreclosure has not yet taken place.

7  Tender of the unpaid debt would be tantamount to affirming the debt. Furthermore, any arrearages

8  are more than offset by the damages suffered by Plaintiff due to the knowingly illegal activities of

9  the Defendants.

10      **WHEREFORE, Plaintiff prays for judgment against Wells Fargo as hereinafter set**

11  **forth.**

12      **COUNT III: VIOLATION OF BUSINESS AND PROFESSIONS CODE, §17200 *et seq.***

13                        **(Against WELLS FARGO)**

14      50.    Plaintiff refers to and incorporates by this reference the allegations contained in the

15  foregoing paragraphs as though set forth fully herein.

16      51.    California Business and Professions Code §17200 et seq. prohibits acts of unfair

17  competition, which means and includes any "fraudulent business practice" and conduct which is

18  "likely to deceive" and is "fraudulent" within the meaning of §17200.

19      52.    As more fully described above, the acts and practices of Wells Fargo are likely to

20  deceive, constituting a fraudulent business act or practice. See, in particular, ¶¶ 33-41. This

21  conduct is ongoing and continues to this day.

22      53.    Specifically, and as set forth with greater particularity in preceding and following

23  paragraphs, Wells Fargo has engaged and is engaging in deceptive business practices with respect

24  to mortgage servicing and the mailing of fraudulent foreclosure documents and related matters by,

25  *inter alia:*

26      (a)  Executing false and misleading documents, including the Notice of Default recorded on

27  April 24, 2008 and the Substitution of Trustee recorded on February 12, 2016;

28      (b)  Executing documents without the legal authority to do so;

17

*Gens v. Wells Fargo Bank, N.A.*                                                    Complaint

(c)  Acting as beneficiary under Plaintiff's deed of trust without the legal authority to do so;

(d)  Violating provisions of the non-judicial foreclosure statute set forth at California Civil Code §§ 2924(a)(1), 2924(a)(1)(C), 2924(a)(6) and 2934a;

(e)  Collecting mortgage payments without authority to do so;

(f)  Violating HAMP guidelines for the express purpose of denying Plaintiff's application for modification of the onerous terms of her pick-a-pay loan and in order to receive proceeds from the sale of the Subject Property during the pending bankruptcy proceedings; and

(g)  Engaging in other deceptive practices, including those which may be uncovered during the course of discovery.

54.  Plaintiff alleges that Wells Fargo's misconduct, as alleged herein, gave, and has given, Wells Fargo an unfair competitive advantage over its competitors.  The scheme implemented by Wells Fargo is specifically designed to defraud California consumers and enrich Wells Fargo at the expense of consumers in this State.

55.  By reason of the foregoing, Wells Fargo should be enjoined from continuing such practices pursuant to California Business & Professions Code §§17203 and 17204.  Plaintiff has suffered injury in fact, including but not limited to, the imminent loss of her home, the imposition of illegal penalties, fees and costs which have increased her mortgage obligation, severe emotional distress, damage to her creditworthiness, inability to modify the terms of her loan and monies paid to Wells Fargo which has no right to collect mortgage payments from Plaintiff. Undoubtedly, other members of the public, similarly have fallen victim to Wells Fargo's deceptive schemes, are likely to be injured as well.

56.  The harm to Plaintiff and to members of the general public outweighs the utility (if any) of Wells Fargo's policies and practices. Consequently, its policies and practices constitute unlawful business acts or practices within the meaning of Business & Professions Code §17200. Moreover, the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

57.  Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under Business & Professions Code §17200 et seq. and related sections and under any California

1  private attorney general statutes. The acts and practices described in the foregoing paragraphs are

2  unfair and violate the Business & Professions Code because they constitute violations of all the

3  statutes previously listed above.

4        **WHEREFORE, Plaintiff prays the Court for an Order and Decree that**:

5        (a)   Pursuant to Business & Professions Code §17203, Defendant Wells Fargo, its

6  successors, agents and assigns, representatives, employees, and all persons who act in concert with

7  it, is permanently enjoined from committing all acts of unfair competition in violation of §17200

8  including, but not limited to, the violations identified in Counts I, III, and IV of Plaintiff's

9  Complaint;

10        (b)  Plaintiff is entitled to an award of statutory attorney's fees;

11        (c)  Plaintiff is entitled to statutory damages including damages available under relevant

12  private attorney general statutes, including CCP 1021.5;

13        (d)  Plaintiff is entitled to the cost of suit; and

14        (e)  Any other relief the Court deems just and proper.

15        <u>**COUNT IV: UNJUST ENRICHMENT**</u>

16        **(Against WELLS FARGO)**

17        58.    Plaintiff refers to and incorporates by this reference the allegations contained in the

18  foregoing paragraphs as though set forth fully herein.

19        59.    Defendant Wells Fargo claims rights to payments on Plaintiff's loan.

20        60.    Plaintiff has in fact made payments to Wells Fargo pursuant to and in reliance upon

21  Defendant's claim of rights to such payments.  Moreover, Wells Fargo claims a right to escrow

22  advances, corporate advances, late charges, attorney's fees and costs, falsely contending that these

23  assessments are permitted under the original loan documents. *See* Wells Fargo's Response to

24  Debtor's Opposition to Trustee's Application for Authority to Employ Broker, filed on March 17,

25  2017, at 3 n.2. A true and correct copy of Wells Fargo's Response is attached hereto as **Exhibit**

26  **"M"** and incorporated by reference as though fully set forth herein.

27        61.    As alleged hereinabove, Wells Fargo does not have rights to such payments. Wells

28  Fargo has collected mortgage payments from Plaintiff for the benefit of itself. Wells Fargo is not a

Case: 17-05045   Doc# 1   Filed: 05/12/17   Entered: 05/12/17 13:20:40   Page 19 of 22

1  valid beneficiary. Wells Fargo had knowledge of such circumstances giving rise to unjust

2  enrichment at the time of claiming rights to payment from Plaintiff on the loan.  Wells Fargo

3  acquired a benefit at the expense of Plaintiff without Plaintiff's knowledge or consent.

4        62.    There exists no express contract between Plaintiff and Wells Fargo governing the

5  collection of mortgage payments and fees and expenses as Plaintiff's mortgage loan was sold to the

6  WSR 27 Trust and, hence, was not among the assets that Wells Fargo acquired in 2008 from

7  Wachovia Bank, f/k/a World Saving Bank.

8        63.    Since the inception of the loan, Wells Fargo has received a benefit from Plaintiff for

9  money had and received.  It is unjust for Wells Fargo to retain the benefit at the expense of Plaintiff.

10  **WHEREFORE,** Plaintiff requests that this Court issue an Order and Decree that Wells

11  Fargo had no right to payments on the loan and that Wells Fargo shall return to Plaintiff all

12  payments made to it. Plaintiff further requests that the Court rule that Wells Fargo is not entitled to

13  the fees, costs and expenses enumerated in Exhibit M at page 3 n.2.

14  **COUNT V: ACCOUNTING**

15        64.    Plaintiff refers to and incorporates by this reference the allegations contained in the

16  foregoing paragraphs as though set forth fully herein.

17        65.    Defendant Wells Fargo owes Plaintiff money to which they it is not entitled and

18  which it obtained from Plaintiff under false pretenses.  *See* allegations set forth in Count IV, *supra*,

19  which are specifically incorporated by reference herein.

20        66.    Defendant disputes Plaintiff's allegations having filed a Proof of Claim in the

21  pending bankruptcy proceeding and claiming that its secured claim includes the principal balance of

22  the loan in the amount of $1, 675, 093.95 plus fees, costs and expenses totally at least $1million.

23  *See, e.g.*, Exhibit "M" hereto.

24        67.    The accounts are complicated; therefore, an accounting is necessary to determine the

25  sums owed to Plaintiff by Wells Fargo.

26  **WHEREFORE,** Plaintiff requests that the Court order an accounting to determine the sums

27  owed to Plaintiff by Wells Fargo and to evaluate the validity of the fees, costs and expenses which

28  Wells Fargo seeks in addition to the principal balance of the mortgage loan.

*Gens v. Wells Fargo Bank, N.A.*                                                   Complaint

**COUNT VI: INJUNCTION**

68.     Plaintiff refers to and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

69.      Plaintiff is informed and believes and on that basis alleges that, unless and until and enjoined and restrained by order of this Court, the chapter 7 trustee will immediately pay Wells Fargo their full proof of claim amount following May 31, 2017's hearing on the chapter 7 trustee's motion to sell and motion to pay all claims out of the sale proceeds.

70.     Plaintiff is further informed and believes and on that basis alleges that she has no adequate remedy at law for the injuries that she will suffer if the chapter 7 trustee pays Wells Fargo's claim prior to the adjudication of this lawsuit, and that she will suffer irreparable injury as a result of said payment.

**WHEREFORE**, Plaintiff requests judgment as set forth below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Wells Fargo as set forth below**:**

1.     For an order determining Wells Fargo's true and correct claim against the bankruptcy estate of Plaintiff;

2.      For an order determining Wells Fargo's true and correct lien against the Subject Property;

3.     For an injunction prohibiting the chapter 7 trustee from making any payment to Wells Fargo pending the outcome of this lawsuit;

4.     For a finding that Wells Fargo has no estate, right, title, lien or interest in said Property;

5.     For a judgment forever enjoining said Defendant from claiming any estate, right, title, lien or interest in the Subject Property;

6.     For a judgment that Wells Fargo does not have an unencumbered legal interest in either the NOTE and DOT;

1  7.   For a finding that Wells Fargo has been unjustly enriched in an amount to be

2  determined by an accounting and that the same, with interest at the legal rate, shall be reimbursed to

3  Plaintiff.

4  8.   For general, consequential and special damages according to proof;

5  9.   For punitive damages in an amount sufficient to deter the fraudulent conduct set forth

6  with particularity in Counts III and IV of this Complaint in the future;

7  10.   For reasonable attorney's fees;

8  11.   For costs of suit herein; and

9  12.   For such other and further relief as the court deems just and proper.

10

11                                    **C. ALEX NAEGELE,**
                                    **A PROFESSIONAL LAW CORPORATION**
12

13  Date: May 12, 2017                By: /s/ C. Alex Naegele
                                         C. Alex Naegele
14                                       Attorney for Plaintiff
                                         LAURA GENS
15

16                              **<u>DEMAND FOR JURY TRIAL</u>**
        Plaintiff demands a trial by jury on all issues so triable.
17

18                                    **C. ALEX NAEGELE,**
19                                    **A PROFESSIONAL LAW CORPORATION**

20  Date: May 12, 2017                By: /s/ C. Alex Naegele
21                                       C. Alex Naegele
                                         Attorney for Plaintiff
22                                       LAURA GENS

23

24

25

26

27

28

*Gens v. Wells Fargo Bank, N.A.*                                              Complaint