1  Dean G. Rallis Jr. (# 94266)
     drallis@afrct.com
2  Matthew D. Pham (# 287704)
     mpham@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL & TRYTTEN LLP
4  301 N. Lake Ave., Suite 1100
   Pasadena, CA  91101-4158
5  Tel: (626) 535-1900 | Fax: (626) 577-7764

6  Attorneys for WELLS FARGO BANK, N.A.,
   successor by merger with Wells Fargo Bank
7  Southwest, N.A., f/k/a Wachovia Mortgage,
   FSB, f/k/a/ World Savings Bank, FSB

8

9              **UNITED STATES BANKRUPTCY COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

11

12  In re                                          | Case No.: 5:15-bk-53562-SLJ

13  LAURA A. GENS,                                 | Chapter 7

14         Debtor.

15  LAURA GENS,                                    | Adv. No.: 5:17-ap-05045-SLJ

16         Plaintiff,                              | **WELLS FARGO'S OPPOSITION TO
                                                   | DEBTOR'S EX PARTE MOTION TO**
17      v.                                         | **EXTEND TIME FOR HEARING ON
                                                   | WELLS FARGO'S MOTION FOR**
18  WELLS FARGO BANK, N.A.; THE BANK              | **SANCTIONS; DECLARATION OF**
19  OF NEW YORK MELLON, f/k/a THE BANK            | **MATTHEW D. PHAM**
    OF NEW YORK, as trustee for the WORLD
20  SAVINGS REMIC 27 TRUST, MORTGAGE              | Date:      October 17, 2017
    PASS-THROUGH CERTIFICATES, SERIES            | Time:      1:30 p.m.
21  27,                                           | Ctrm:      3099
                                                   |            280 South First Street
22         Defendants.                            |            San Jose, California 95113

23

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

*(Left margin, vertical text)* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

93000/BR2339/01873408-4

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Creditor-defendant Wells Fargo Bank, N.A., as successor by merger with Wells Fargo

2    Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, which was formerly

3    known as World Savings Bank, FSB ("Wells Fargo"), hereby submits its opposition (the

4    "Opposition") to the ex parte motion (the "Ex Parte Motion" or "Motion") filed by the debtor-

5    plaintiff Laura Gens (the "Debtor"), at docket nos. 35 and 36,[1] to continue the hearing on Wells

6    Fargo's motion for Rule 9011 sanctions against the Debtor and her counsel (the "Sanctions

7    Motion"), at docket no. 18, for the filing of the first amended complaint (the "Amended

8    Complaint" or "Complaint"), at docket no. 10. Wells Fargo's Opposition is supported by the

9    attached declaration of Matthew D. Pham (the "Pham Declaration").

10    Believing Wells Fargo's Sanctions Motion to be itself a violation of Rule 9011, the

11   Debtor wishes to pursue her own motion for sanctions against Wells Fargo and its counsel (the

12   "Counter-Sanctions Motion"). Yet, despite knowing about Wells Fargo's Sanctions Motion and

13   the arguments therein for months, the Debtor simply sat on her hands. She waited to serve her

14   Counter-Sanctions Motion until **October 6, 2017**, and she then waited to request a continuance

15   of the hearing on Wells Fargo's Sanctions Motion until **October 12**—only five days before the

16   hearing and after all related briefing deadlines had passed. This failure to timely act is the

17   Debtor's own doing, and nothing that she has done warrants the Court continuing the hearing on

18   Wells Fargo's Sanctions Motion to accommodate for the Debtor's delayed efforts to prosecute

19   her own Counter-Sanctions Motion. Therefore, the Court should deny the Ex Parte Motion.

20        **1.    FACTUAL AND PROCEDURAL BACKGROUND**

21    Wells Fargo's counsel sent a letter to the Debtor's counsel on **June 22, 2017**, providing

22   informal notice of Wells Fargo's intention to pursue a motion for Rule 9011 sanctions against the

23   Debtor and her counsel if the Debtor's original complaint (the "Original Complaint"), at docket

24   no. 1, was not withdrawn (the "Sanctions Letter"). See Pham Decl. ¶ 3 & Ex. 1. The Sanctions

25   Letter laid out numerous grounds for why Wells Fargo believed the Original Complaint was

26   frivolous, and most of those grounds were subsequently incorporated into Wells Fargo's

27

28   _____
     [1]   The same version of the Ex Parte Motion and supporting papers appear to have been filed
     twice.

Sanctions Motion (as only a small number of nominal changes were made from the Original Complaint to the Amended Complaint). Compare Pham Decl. Ex. 1, with Mem. Supp. Sanctions Mot. 8:13–15:18, ECF No. 18-1. On **June 26**, the Debtor's counsel responded with her own letter to Wells Fargo's counsel, insinuating that the Debtor would pursue counter-sanctions against Wells Fargo and its counsel if Wells Fargo proceeded with a sanctions motion (the "Counter-Sanctions Letter"). See Pham Decl. ¶ 4 & Ex. 2.

After the Debtor filed her Amended Complaint on July 13, Wells Fargo served its Sanctions Motion and supporting papers on the Debtor and her counsel on **August 16** by overnight mail, which means that the Debtor and her counsel have been in possession of the Sanctions Motion and supporting papers since **August 17**. See Pham Decl. ¶¶ 5–7. After the safe-harbor period expired, Wells Fargo then filed the Sanctions Motion on **September 19**, with the hearing on the motion set for **October 17**, the same hearing date as Wells Fargo's motion to dismiss the Complaint (the "Dismissal Motion"). And the papers that were served on August 16 were the same as the papers that were filed on September 19, even including the information regarding the hearing date for the Sanctions Motion. See Pham Decl. ¶ 7.

On **October 3**, the Debtor filed her opposition to the Sanctions Motion, and three days later, on **October 6**, the Debtor served her Counter-Sanctions Motion on (at least) Wells Fargo's counsel. See Pham Decl. ¶ 8. Wells Fargo then filed its reply in support of the Sanctions Motion on **October 10**. And the Debtor then waited until **October 12**, just five days before the hearing on the Sanctions Motion, to file her Ex Parte Motion requesting a six-week continuance of the hearing to **November 28**.

## 2. **ARGUMENT**

The Debtor simply waited too long to take appropriate action, and now she wants the Court to reward her for her shortcomings. The Court should not be moved by her arguments.

Given the lengthy amount of time that the Debtor and her counsel have (1) known about the arguments advanced by Wells Fargo (i.e., since **June 22**), (2) intended to pursue counter-sanctions against Wells Fargo (i.e., since at least **June 26**), and (3) had a copy of Wells Fargo's Sanctions Motion and supporting papers (i.e., since **August 17**) (which not only informed her of

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Wells Fargo's finalized arguments but also of Wells Fargo's intention to have the Sanctions

2  Motion heard on October 17), the Debtor had ample time and opportunity to prepare her

3  Counter-Sanctions Motion so that it could be served and calendared timely. However, the Debtor

4  idly waited and did not serve her motion until **October 6—15 weeks** after the Debtor originally

5  received Wells Fargo's Sanctions Letter.

6       Also, given her intention to pursue counter-sanctions against Wells Fargo from the start

7  (i.e., since at least **June 26**), the Debtor could have taken a number of different, immediate

8  actions after Wells Fargo filed its Sanction Motion on **September 19** to otherwise prosecute her

9  Counter-Sanctions Motion in an appropriate manner. She could have filed (1) a similar Ex Parte

10  Motion <u>before</u> the deadlines to file oppositions and replies passed, as a continuance would now

11  provide her with an extended opportunity to prepare and file something akin to a surreply, or she

12  could have filed (2) an ex parte application requesting that Rule 9011's safe-harbor period and/or

13  the notice period for her motion be shortened. In any case, the Debtor had options, and she failed

14  to proactively exercise them. Instead, the Debtor chose to sit on her hands until **October 12** to

15  file her Ex Parte Motion and request a six-week continuance of the hearing.

16       In contrast, Wells Fargo has timely filed all of its papers in this adversary proceeding and

17  has promptly prosecuted its Dismissal Motion and Sanctions Motion so that both could be heard

18  at the same time. Also, Wells Fargo is fully prepared to argue both motions at the originally

19  scheduled hearing. In the end, Wells Fargo acted diligently, while the Debtor did not. The Court

20  should not reward her with a continuance.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**3.** <u>**CONCLUSION**</u>

**WHEREFORE**, Wells Fargo respectfully requests that the Court enter an order:

1.    Denying the Debtor's Ex Parte Motion;

2.    Providing for such other and further relief as this Court deems appropriate under the circumstances.

Dated:  October 12, 2017                    ANGLIN, FLEWELLING, RASMUSSEN,
                                            CAMPBELL & TRYTTEN LLP

                                            By:  <u>   /s/ Dean G. Rallis Jr.              </u>
                                                  Dean G. Rallis Jr.

                                            Attorneys for WELLS FARGO BANK, N.A.,
                                            successor by merger with Wells Fargo Bank
                                            Southwest, N.A., f/k/a Wachovia Mortgage, FSB,
                                            f/k/a World Savings Bank, FSB

I, Matthew D. Pham, declare as follows:

1.      I am an attorney licensed to practice before this Court and employed by the law firm of Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, counsel of record for the creditor-defendant Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB ("Wells Fargo"), in the above-captioned adversary proceeding commenced by the debtor-plaintiff Laura Gens (the "Debtor").

2.      I make this declaration in support of Wells Fargo's opposition to the Debtor's ex parte motion to continue the hearing on Wells Fargo's motion for Rule 9011 sanctions against the Debtor and her counsel (the "Sanctions Motion"). I have personal knowledge of the facts stated in this declaration, and if called to testify, could and would, without waiver of any applicable privilege, testify that the facts stated in this declaration are true and correct to the best of my knowledge and information.

3.      On June 22, 2017, I sent an email to Nancy Weng and C. Alex Naegele, co-counsel for the Debtor, attaching a letter from Dean G. Rallis Jr. A true and correct copy of this email (including the attached letter), which was transmitted by me on Thursday, June 22, 2017, at approximately 4:44 p.m., is attached hereto as **Exhibit 1**.

4.      On June 26, 2017, I received an email from Sherri Li, the receptionist from Ms. Weng's firm, attaching a letter from Ms. Weng responding to Mr. Rallis's letter. A true and correct copy of this email (including the attached letter), which was transmitted to me on Monday, June 26, 2017, at approximately 1:23 p.m., is attached hereto as **Exhibit 2**.

5.      On August 15, 2017, I placed certain documents into three sealed envelopes with prepaid postage for overnight delivery by Golden State Overnight, and among those documents were (1) **Wells Fargo's Motion for Sanctions Against the Debtor, Her Counsel of Record, and Her Counsel's Firm Pursuant to Fed. R. Bankr. P. 9011**; (2) **Memorandum of Points and Authorities in Support of Wells Fargo's Motion for Sanctions Against the Debtor, Her Counsel of Record, and Her Counsel's Firm Pursuant to Fed. R. Bankr. P. 9011**;

1   (3) **Declaration of Dean G. Rallis Jr. in Support of Wells Fargo's Motion for Sanctions**

2   **Against the Debtor, Her Counsel of Record, and Her Counsel's Firm Pursuant to Fed. R.**

3   **Bankr. P. 9011**; (4) **Declaration of Matthew D. Pham in Support of Wells Fargo's Motion**

4   **for Sanctions Against the Debtor, Her Counsel of Record, and Her Counsel's Firm**

5   **Pursuant to Fed. R. Bankr. P. 9011**; and (5) **Request for Judicial Notice in Support of Wells**

6   **Fargo's Motion for Sanctions Against the Debtor, Her Counsel of Record, and Her**

7   **Counsel's Firm Pursuant to Fed. R. Bankr. P. 9011** (collectively, the "Rule 9011 Papers").

8         6.    The first envelope was addressed to (1) **Laura A. Gens, 4141 Old Trace Road,**

9   **Palo Alto, California 94306** (the "Debtor Service Package"); the second envelope was

10  addressed to (2) **Nancy Weng, Esq., Tsao-Wu & Yee, LLP, 99 North First Street, Suite 200,**

11  **San Jose, California 95113** (the "Counsel Service Package"); and the third envelope was

12  addressed to (3) **Teddy Tsao-Wu, Esq., Tsao-Wu & Yee, LLP, 4215 Geary Boulevard, San**

13  **Francisco, California 94118-3001** (the "Firm Service Package"). The Debtor Service Package,

14  the Counsel Service Package, and the Firm Service Package were then placed into the receptacle

15  controlled by Golden State Overnight on **August 16, 2017**.

16        7.    The tracking information from Golden State Overnight indicated that (1) the

17  Debtor Service Package was delivered on **August 17, 2017**, at approximately 12:02 p.m.; (2) the

18  Counsel Service Package was delivered on **August 17, 2017**, at approximately 8:57 a.m.; and

19  (3) the Firm Service Package was delivered on **August 17, 2017**, at approximately 10:28 a.m.

20        8.    I caused the Rule 9011 Papers to be filed on September 19, 2017. No changes to

21  form or substance were made to the Rule 9011 Papers that were filed. In other words, the

22  Rule 9011 Papers that were served on August 16, 2017, were the same as the Rule 9011 Papers

23  that were filed on September 19, 2017, even including the information regarding the hearing date

24  for the Sanctions Motion.

25        9.    On October 6, 2017, I received an email from Ms. Weng, attaching the Debtor's

26  motion for Rule 9011 sanctions against Wells Fargo and its counsel (the "Counter-Sanctions

27  Motion"), along with the supporting papers. On October 10, 2017, I also received a package by

28  mail containing the Debtor's Counter-Sanctions Motion and supporting papers, with the postage

showing a date of October 6, 2017.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 12, 2017, at Pasadena, California.

/s/ Matthew D. Pham
Matthew D. Pham

**EXHIBIT 1**

| | |
|---|---|
| **From:** | Matthew Pham |
| **Sent:** | Thursday, June 22, 2017 4:44 PM |
| **To:** | 'nweng@tsaoyee.com'; Alex Naegele |
| **Cc:** | Dean G. Rallis |
| **Subject:** | Gens v. Wells Fargo Bank A/P - Letter |
| **Attachments:** | Letter to Debtor's Counsel (01778075).PDF |

Ms. Weng & Mr. Naegele:

Please see the attached letter from Dean Rallis.

Thank you,

Matt Pham



**Matthew D. Pham, Esq.**
Anglin Flewelling Rasmussen Campbell & Trytten LLP (AFRCT)
301 N. Lake Ave., Suite 1100
Pasadena, California 91101
Telephone:  626-535-1900
Fax: 626-577-7764
E-Mail: mpham@afrct.com

This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed.  If you have received this transmission in error, please immediately return it to the sender.  Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

**EXHIBIT 1 TO PHAM DECL.
PAGE 4**



**ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP**
301 N. Lake Ave, Suite 1100
Pasadena, CA 91101-4158
tel:  626.535.1900
fax: 626.577.7764
www.afrct.com

Dean G. Rallis Jr.
Email:  drallis@afrct.com

June 22, 2017

<u>**VIA EMAIL ONLY**</u>

C. Alex Naegele
C. Alex Naegele, A Professional Law Corporation
95 South Market Street, Suite 300
San Jose, California 95113

Nancy Weng
Tsao-Wu & Yee, LLP
31 North 2nd Street, Suite 260
San Jose, California 95113

  Re: Notice of Wells Fargo's Intent to Seek Sanctions
    *Gens v. Wells Fargo Bank, N.A.*, Adv. No. 5:17-ap-05045-SLJ

Dear Ms. Weng and Mr. Naegele:

  This letter is being sent to both of you as co-counsel for Laura Gens (the "<u>Debtor</u>") and serves as Wells Fargo Bank, N.A.'s ("<u>Wells Fargo</u>") informal notice of its intent to seek sanctions, jointly and severally, against the Debtor, Mr. Naegele's firm, Mr. Naegele in his personal capacity, Ms. Weng's firm, and Ms. Weng in her personal capacity, for the filing of the Debtor's complaint against Wells Fargo on May 12, 2017 (the "<u>Complaint</u>"), that commenced the above-referenced adversary proceeding (the "<u>Adversary Proceeding</u>") before the United States Bankruptcy Court, Northern District of California (the "<u>Court</u>"). The sanctions are being sought under Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>" or "<u>Rules</u>"), which parallels Rule 11 of the Federal Rules of Civil Procedure (the "<u>Civil Rules</u>"), as well as under the Court's inherent sanctioning authority as recognized under § 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>" or "<u>Code</u>") and Ninth Circuit precedent.[1]

---

[1] Although Ms. Weng did not personally sign the Complaint, she and her firm are still listed as co-counsel for the Debtor on the Complaint and may therefore be the subject of sanctions under Rule 9011. See Fed. R. Civ. P. 11

93000/BR2339/01767580-7

Washington Office:  One Convention Place, 701 Pike Street, Suite 1560, Seattle, Washington 98101 | tel: 206.492.2300 | fax:  206.492.2319
Oregon Office:  One World Trade Center, 121 SW Salmon Street, Suite 1100, Portland, Oregon 97204 | tel: 503.471.1384 | fax 503.471.1401

EXHIBIT 1 TO PHAM DECL.
PAGE 5

The Complaint asserts six claims for relief against Wells Fargo revolving around the allegations that Wells Fargo violated a class-action settlement agreement with respect to the Debtor by not providing her with a loan modification and that her loan was securitized and sold in 2006 as part of a mortgage-backed security, for the purpose of establishing that Wells Fargo is not the proper party to assert any rights under the applicable note and deed of trust (the "<u>Note</u>" and "<u>Deed of Trust</u>") and is therefore not the holder of the secured claim or lien based on the Note and Deed of Trust.[2]

Not only does Wells Fargo wholeheartedly disagree with these allegations, but Wells Fargo contends that the Complaint has been filed for an improper purpose and asserts both frivolous claims with no chance of success and baseless allegations lacking in any evidentiary support, which never would have been asserted had counsel made a reasonable and competent inquiry, justifying sanctions under Rule 9011. And given how frivolous the claims and allegations are, Wells Fargo further contends that the filing of the Complaint rises to the level of bad faith, warranting sanctions under the Court's inherent authority.[3]

Wells Fargo is preparing its "safe-harbor" motion for sanctions pursuant to Rule 9011(c)(1)(A), which will be served upon counsel unless the Complaint is withdrawn and the Adversary Proceeding dismissed by close of business on **Monday, June 26, 2017**. Wells Fargo is also preparing a separate motion seeking sanctions under the Court's inherent authority, which will be served upon counsel at the same time as it is filed (as there is no safe-harbor period for such motion) unless the Complaint is withdrawn and the Adversary Proceeding dismissed by the same stated deadline. **Please note that the sanctions sought by Wells Fargo will include, but will not be limited to, its attorney's fees incurred in preparing this letter, any sanctions motion, any motion to dismiss to the Complaint, and any other paper that Wells Fargo must prepare before the Adversary Proceeding is dismissed.[4]**

What follows below is a summary discussion of why Wells Fargo believes the Court will ultimately sanction the Debtor and counsel for presenting the Complaint to the Court after finding such pleading to be frivolous and filed for an improper purpose.

---

advisory committee note (1993) ("[Rule 11] permits the court to consider whether other attorneys in the firm, <u>co-counsel</u>, <u>other law firms</u>, or the party itself should be held accountable . . . ." (emphasis added)); Fed. R. Bankr. P. 9011 advisory committee note (1997) (stating that the 1993 advisory committee note to Rule 11 should be consulted for an explanation of Rule 9011).

[2] The note and deed of trust attached to the Debtor's Complaint are the same note and deed of trust attached to Wells Fargo's proofs of claim, so any references to the "Note" and "Deed of Trust" are intended to refer to the same documents.

[3] Wells Fargo does not waive any rights to move to dismiss the Complaint and does not admit any of the allegations of the Complaint by sending this letter.

[4] <u>See</u> Fed. R. Bankr. P. 9011(c)(2) (authorizing court to issue "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation"); <u>Miller v. Cardinale (In re DeVille)</u>, 361 F.3d 539, 551 (9th Cir. 2004) (upholding bankruptcy court's sanction of $20,000 for attorney's fees and costs against a party and his counsel pursuant to its inherent authority).

**EXHIBIT 1 TO PHAM DECL.
PAGE 6**

**The Debtor's Complaint Asserts Claims for Which She Has No Standing**

For a plaintiff to properly assert claims for relief against a defendant, the plaintiff must establish that it has standing to assert those claims.[5]

While the Debtor, as a chapter 7 debtor in a case with a potential surplus estate, may have standing to pursue claim objections (i.e., seeking to reduce, in part or in whole, the amount of a claim),[6] the Complaint attempts to do more than object to Wells Fargo's claim.[7] In the Complaint, each of the claims seeks affirmative relief against Wells Fargo, as evidenced by the prayers for relief asserted therein (e.g., praying for damages, injunctive relief requiring Wells Fargo to engage in a loan modification negotiation, enjoining Wells Fargo from committing anti-competitive acts, and compelling Wells Fargo to return monies previously received).

Yet, for the Debtor to have standing to assert these kinds of claims against Wells Fargo, the Debtor, rather than the estate, must own the claims.[8] If the claims belong to the estate (i.e., the claims constitute estate property), "[t]he trustee's standing to sue on behalf of the estate is exclusive."[9]

**How can the Debtor establish that each of her claims in the Complaint belong to her, rather than the estate, and that she has standing to pursue those claims?**

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[10] Among the interests that become estate property are claims or causes of action that accrued prepetition,[11] even if those accrued causes of action were not known to the debtor at the time of filing.[12] In determining whether a claim accrued prepetition and thus became estate property, the court looks to when the claim could have been brought under applicable nonbankruptcy law.[13] Under California law (i.e., the applicable state law under

---

[5] See Crevier v. Welfare & Pension Fund for Local 701 (In re Crevier), 820 F.2d 1553, 1555 (9th Cir. 1987).

[6] See Dellamarggio v. B-Line, LLC (In re Barker), 306 B.R. 339, 346 (Bankr. E.D. Cal. 2004) ("A chapter 7 debtor . . . has standing [to object to a claim] when there is a surplus in the estate for the debtor after all claims are paid."),

[7] See Wells Fargo Bank, N.A. v. Meda (In re Schugg), Case No. CV 07-1962-PHX-JAT, 2008 U.S. Dist. LEXIS 69914, at *6–8 (D. Ariz. Sept. 3, 2008) (distinguishing between when a debtor pursues an objection to a creditor's claim and when a debtor pursues an affirmative claim against a creditor on behalf of the estate).

[8] See Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001).

[9] Estate of Spirtos v. One San Bernardino Cnty. Super. Ct. Case Numbered SPR 02211, 443 F.3d 1172, 1175 (9th Cir. 2006).

[10] 11 U.S.C. § 541(a)(1).

[11] See Turner v. Cook, 362 F.3d 1219, 1226 (9th Cir. 2004) (citing Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986)).

[12] See Porrett v. Hillen (In re Porrett), 564 B.R. 57, 67 (Bankr. D. Idaho 2016).

[13] See Goldstein v. Stahl (In re Goldstein), 526 B.R. 13, 21 (B.A.P. 9th Cir. 2015).

**EXHIBIT 1 TO PHAM DECL.
PAGE 7**

which the Debtor's claims arise), "a cause of action accrues . . . when a suit may be maintained. Ordinarily this is when the wrongful act is done and the obligation or the liability arises."[14]

Given that Wells Fargo's alleged wrongful acts underlying the Debtor's claims (i.e., the violation of the class-action settlement agreement, the assertion of rights following securitization of the Debtor's loan, the collection of the Debtor's payments, etc.) began before the November 11, 2015, petition date, the Debtor clearly could have brought her claims before the filing of her petition, which means that the claims accrued prepetition. It then follows that the claims in her Complaint are property of the estate and can only be pursued by the chapter 7 trustee Doris Kaelin (the "Trustee"). Thus, as to any of the claims in the Complaint that cannot be construed purely as an objection to Wells Fargo's claim, the Debtor will be unable to establish that she has standing to pursue those claims, which will support the Court finding that the Complaint asserts baseless claims for which the Debtor has no chance of success.[15]

### The Debtor's Complaint Asserts Frivolous Claims Unwarranted Under Existing Law

To the extent that the claims in the Complaint can be construed as only an objection to Wells Fargo's claim (for which the Debtor may have standing to pursue), the Complaint can, for simplicity's sake, be boiled down to two "claims for relief" or bases for objection: (1) that the alleged violation of the class-action settlement agreement by Wells Fargo as to the Debtor reduces the amount of Wells Fargo's claim (hereinafter referred to as a "class-action" claim), and (2) that the Debtor's loan with World Savings Bank was allegedly securitized and sold to the "WSR 27 Trust" and that Wells Fargo, as World Savings Bank's eventual successor in interest,

---

[14] Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal. 4th 809, 815 (2001) (internal quotation marks omitted).

[15] Furthermore, in the highly unlikely scenario that the Debtor can even establish standing on her affirmative claims for relief, those claims, which arise under state law, will still fail as they are preempted by federal law.

It is obvious that counsel, in drafting the Complaint, found a cookie-cutter complaint with securitization-related allegations and dropped in details about the Debtor, along with additional information regarding the class-action settlement agreement and the Bankruptcy Case. Wells Fargo has seen borrowers make these exact allegations in the past and has successfully moved to dismiss the claims based on such allegations with prejudice, like in Calimpusan v. Wells Fargo Bank, N.A., Case No. 2:15-cv-08452-AB-KS (C.D. Cal.), where the borrower asserted nearly the same allegations as in the Complaint and the district court granted Wells Fargo's motion to dismiss such complaint and found the complaint so defective that it was dismissed without leave to amend.

Wells Fargo is confident that the Court, like the district court in Calimpusan, will find that the Debtor's affirmative claims for relief based on her securitization-related allegations are preempted by the Home Owners' Loan Act (HOLA) and the related federal regulation codified in 12 C.F.R. § 560.2. Because her state-law-based claims challenge the "sale or purchase of, or investment or participation in, mortgages" originated by a federal savings association (i.e., World Savings Bank), 12 C.F.R. § 560(b)(10), the claims have been preempted by HOLA and will certainly have no chance of succeeding. See Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1031–33 (N.D. Cal. 2010) (holding that plaintiff's claims for wrongful foreclosure and quiet title relying on alleged wrongful transfer of deed of trust were preempted by HOLA); Terrazas v. Wells Fargo Bank, N.A., Case No. 13-cv-00133-BEN-MDD, 2013 U.S. Dist. LEXIS 153046, at *13 (S.D. Cal. Oct. 23, 2013) (concluding that plaintiffs' claims based on allegation "that Wells Fargo is not the true owner of the Note or Deed of Trust, and therefore had no authority to either service the loan or to foreclose upon the Plaintiffs' home . . . relate to the actions of the originator of the loan and its successor entities in 'servicing' the mortgage [and] [a]s such, Plaintiffs' state law claims fall squarely within the scope of § 560.2(b)(10).").

**EXHIBIT 1 TO PHAM DECL.
PAGE 8**

was purportedly no longer the proper party to assert a right to payment under the Note and Deed of Trust, warranting the disallowance of Wells Fargo's entire claim (hereinafter referred to as a "loan-securitization" claim). Nevertheless, these two claims for relief or bases for objecting to Wells Fargo's claim are still frivolous, as they would be clearly barred by a number of common law preclusion doctrines and would otherwise easily fail on the merits.

<u>Res Judicata Will Bar the Debtor's "Class-Action" and "Loan-Securitization" Claims</u>

As mentioned in multiple prior filings, the Debtor will obviously be barred by res judicata from raising the "class-action" and "loan-securitization" claims in her Complaint.

The doctrine of res judicata (or claim preclusion) "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."[16] Contrary to the Debtor's prior arguments, application of res judicata does not require that the claim raised in the subsequent proceeding be the same claim that was raised in the prior one; rather, res judicata bars claims that were raised <u>or could have been raised</u> in the prior proceeding.[17] Res judicata "relieve[s] parties of the costs and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."[18] "Permitting these later-filed claims to proceed would create incentive for plaintiffs to hold back claims and have a second adjudication."[19] And relevant here, the Ninth Circuit has recognized that "the allowance or disallowance of a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata."[20]

**How can the Debtor overcome the application of res judicata as to her "class-action" claim and argue that such claim could not have been raised at the same time as her objections to Wells Fargo's claim?**

Given that the Debtor's "class-action" claim now seeks to reduce Wells Fargo's claim based on an alleged breach of the class-action settlement agreement, the Debtor clearly could have raised the "class-action" claim in the prior claim-objection proceedings in the Bankruptcy Case, where she was already seeking to reduce Wells Fargo's claim on other grounds.[21] Even Ms. Weng admitted as much at the hearing on the Debtor's first motion for stay pending appeal, where she stated, "Well . . . [the "class-action" claim] should have been brought up in the

---

[16] <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 321–22 (9th Cir. 1988).

[17] <u>See</u> <u>Stewart v. U.S. Bancorp</u>, 297 F.3d 953, 956 (9th Cir. 2002).

[18] <u>Dodd v. Hood River Cnty.</u>, 59 F.3d 852, 863 (9th Cir. 1995).

[19] <u>Mpoyo v. Litton Electro-Optical Sys.</u>, 430 F.3d 985, 989 (9th Cir. 2005).

[20] <u>Siegel v. Fed. Home Loan Mortg. Corp.</u>, 143 F.3d 525, 529 (9th Cir. 1998) (concluding that creditor's allowed claims for amounts owed under notes and deeds of trust filed in bankruptcy case precluded debtor's subsequent lawsuit against creditor for violating duties under same notes and deeds of trust).

[21] <u>See</u> <u>W. Sys., Inc. v. Ulloa</u>, 958 F.2d 864, 871 (9th Cir. 1992) ("Different theories supporting the same claim for relief must be brought in the initial action.").

**EXHIBIT 1 TO PHAM DECL.
PAGE 9**

June 22, 2017
Page 6

objection to claim, and there was an objection to claim. And I understand that was overruled
. . . ."[22]

**Similarly, how can the Debtor overcome the application of res judicata as to her "loan-securitization" claim and argue that such claim could not have been raised at the same time as her objections to Wells Fargo's claim in the Bankruptcy Case or her complaints in the first civil action?**

Like the "class-action" claim, the Debtor's "loan-securitization" claim could have also been raised concurrently with the Debtor's claim objections. Given that the Debtor was already asserting in her claim objections that Wells Fargo was not entitled to recover a particular amount under the Note and Deed of Trust, the Debtor could have also argued at the same time that Wells Fargo was not entitled to recover any amount under the Note and Deed of Trust. In other words, because the Debtor's argument in her claim objections that Wells Fargo is owed some other amount under the Note and Deed of Trust is premised on Wells Fargo holding a right to payment under the Note and Deed of Trust in the first place, the Debtor's "loan-securitization" claim, which argues that Wells Fargo does not hold such a right at all, involves the same transactional nucleus of operative facts. It then follows that the "loan-securitization" claim could have been raised at the same time as her claim objections.

As to the Debtor's previous arguments that she could not have raised the "loan-securitization" claim in her claim objections because such claim required the filing of an adversary proceeding, those arguments have no merit for a number of reasons.

First, the Debtor seems to ignore the fact that she was in control of how she would procedurally pursue objecting to Wells Fargo's claim. She had the option of objecting to Wells Fargo's claim on every basis in a single complaint filed in a separate adversary proceeding[23] or simultaneously pursuing her original claim objections in the Bankruptcy Case and a separate complaint for her "loan-securitization" claim, where both proceedings would have likely been consolidated given how intertwined the issues are.[24] Yet, the Debtor chose to only pursue her claim objections solely as a contested matter in the Bankruptcy Case, where Rule 3007(b)'s restriction that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim" was self-imposed by the Debtor and cannot be an argument for why she could not have raised her "loan-securitization" claim at the same time as her claim objections. The Debtor had the procedural mechanisms to pursue her "loan-securitization" claim, but because she elected not to use them, she cannot argue that she was procedurally precluded from doing so.

---

[22] Hr'g Tr. 3:16–18, Apr. 5, 2017, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[23] See Fed. R. Bankr. P. 3007(b).

[24] See Fed. R. Bankr. P. 7042; De La Salle v. U.S. Bank, N.A. (In re De La Salle), 461 B.R. 593, 603 (B.A.P. 9th Cir. 2011) (involving consolidation of debtors' claim objection and adversary proceeding against secured creditor).

93000/BR2339/01767580-7

**EXHIBIT 1 TO PHAM DECL.
PAGE 10**

Second, contrary to the Debtor's argument that Rule 7001(2) requires her "loan-securitization" claim to be adjudicated in an adversary proceeding, an adversary proceeding would not even be required for the relief that the Debtor now pursues with that claim. In actuality, the Complaint cannot be construed as the Debtor seeking to invalidate or avoid the lien arising under the Note and Deed of Trust; the Complaint can only be construed as seeking a determination that Wells Fargo is not the proper party to assert rights under that lien, without any determination as to the validity of the lien. If the Debtor was attempting to invalidate or avoid the lien, the Complaint would have included as defendants all parties that may assert themselves as the proper lienholder, including Bank of New York Mellon, as trustee of the "WSR 27 Trust," whom the Debtor alleges acquired the Debtor's loan. Since the Debtor decided to sue only Wells Fargo, the Complaint simply cannot be construed as seeking to "determine the validity, priority, or extent of a lien or other interest in property."[25] It then follows that an adversary proceeding was not necessary for the adjudication of the Debtor's "loan-securitization" claim and that there was no procedural barrier to the Debtor raising such claim as part of her claim objections.

Third, even if an adversary proceeding was required to ultimately adjudicate the Debtor's "loan-securitization" claim, that does not excuse the Debtor from, at least, raising the "loan-securitization" issue initially in her claim objections. In fact, in a similar context, the Ninth Circuit has upheld a lower court's application of res judicata barring a trustee from raising, in a subsequent adversary proceeding, an antitrust claim against the successful bidders of a sale after the trustee failed to raise the claim in the original sale proceeding in the bankruptcy case.[26] There, the court was less concerned with the structural or procedural limitations of raising the antitrust claim and more focused on the timing of raising the claim, determining that "the [trustee's antitrust] claim could have been asserted at the time of the proceeding confirming sale, and this opportunity is sufficient to satisfy the requirement of the doctrine of res judicata."[27] Thus, Ninth Circuit precedent dictates that the Debtor still needed to, at a minimum, raise the "loan-securitization" claim in the claim-objecting proceedings even if the claim could not have been fully adjudicated in that same proceeding.

Fourth, even if the "loan-securitization" claim could not have been raised in any manner in the Bankruptcy Case, the Debtor fails to recognize that the claim could have been raised in her first civil lawsuit against Wachovia/Wells Fargo in 2010. In that lawsuit, the Debtor asserted a variety of claims under both state law and federal law, seeking to enjoin Wachovia/Wells Fargo from foreclosing under the same Note and Deed of Trust.[28] Given that the "loan-securitization" claim, if asserted then, would have represented a different theory for the relief sought by the Debtor (i.e., stopping the foreclosure on the Palo Alto property), the "loan-securitization" claim clearly could have been raised in the first civil lawsuit. But following the district court's entry of

---

[25] Fed. R. Bankr. P. 7001(2).

[26] See Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.), 28 F.3d 965, 969–70 (9th Cir. 1994).

[27] Id. at 969.

[28] Pl.'s 2d Am. Compl., ECF No. 25, Case No. 5:10-cv-01073 (N.D. Cal.); Pl.'s 3d Am. Compl., ECF No. 65, Case No. 5:10-cv-01073 (N.D. Cal.).

**EXHIBIT 1 TO PHAM DECL.
PAGE 11**

two final orders dismissing all of the Debtor's claims with prejudice in 2011,[29] res judicata barred the Debtor from raising her "loan-securitization" claim in a subsequent proceeding.

Since how easily the Debtor's potential arguments against the application of res judicata would be defeated, the Court would have no issue in finding that her "class-action" and "loan-securitization" claims are both frivolous.

<u>Collateral Estoppel Will Bar the Debtor's "Loan-Securitization" Claim</u>

In addition to res judicata barring the Debtor from raising the "loan-securitization" claim, collateral estoppel would also bar the Debtor from relitigating an issue critical to that claim, which would further support finding the "loan-securitization" claim to be frivolous.

The doctrine of collateral estoppel (or issue preclusion) "like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."[30] A court invokes collateral estoppel to "prevent[ ] relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding."[31]

**How can the Debtor overcome the application of collateral estoppel on the issue of whether Wells Fargo is the proper party to assert the right to payment under the Note and Deed of Trust when the Court necessarily determined that issue in connection with its order awarding Wells Fargo its postpetition interest, fees, and costs under § 506(b)?**

The Debtor cannot ignore that the Court necessarily decided the issue that Wells Fargo was the proper party to assert the right to payment under the Note and Deed of Trust when it granted Wells Fargo's § 506(b) motion[32] and awarded Wells Fargo its postpetition interest, attorney's fees, and costs that Wells Fargo asserted were provided for under the Note and Deed of Trust.[33] The Court could not have given such an award to Wells Fargo unless the Court found that Wells Fargo held the secured claim (i.e., had a right to payment) based on the same Note and Deed of Trust because § 506(b) of the Code only permits the holder of a secured claim to recover "interest on such claim, and any reasonable fees, costs, or charges <u>provided for under the agreement . . . under which such claim arose</u>."[34] In other words, if Wells Fargo was not the

---

[29] Order Granting Defs.' Mot. Dismiss in Part with Prejudice, ECF No. 64, Case No. 5:10-cv-01073 (N.D. Cal.); Order Granting Defs.' Mot. Dismiss with Prejudice, ECF No. 72, Case No. 5:10-cv-01073 (N.D. Cal.). While the former dismissal order was never appealed by the Debtor, the latter was appealed and then affirmed by the Ninth Circuit. <u>See</u> Memo., ECF No. 26-1, Case No. 11-16476 (9th Cir.).

[30] <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979).

[31] <u>Robi</u>, 838 F.2d at 322.

[32] Wells Fargo's Mot. Allowance Postpetition Interest, Fees & Costs, ECF No. 132, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[33] Order Granting Wells Fargo's Mot. Allowance Postpetition Interest & Fees, Costs, ECF No. 201, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[34] 11 U.S.C. § 506(b) (emphasis added).

**EXHIBIT 1 TO PHAM DECL.
PAGE 12**

proper party to assert the right to payment under the Note and Deed of Trust, the Court would have no basis for granting Wells Fargo's § 506(b) motion. Because the Court did do so, it necessarily determined that Wells Fargo was the proper party to assert the right to payment under the Note and Deed of Trust, and collateral estoppel would then bar the Debtor from relitigating an issue critical to her "loan-securitization" claim.

Judicial Estoppel Will Bar the Debtor's "Loan-Securitization" Claim

Additionally, judicial estoppel bars the Debtor from taking the position that Wells Fargo is not the proper party to assert the right to payment under the Note and Deed of Trust, further reinforcing the frivolousness of the Debtor's "loan-securitization" claim.

The doctrine of judicial estoppel (or preclusion of inconsistent positions) "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position,"[35] with the court invoking judicial estoppel in order to "protect against a litigant playing fast and loose with the courts."[36]

**How can the Debtor overcome application of judicial estoppel that would bar her from now taking the position that Wells Fargo is not the proper party to assert the right to payment under the Note and Deed of Trust after previously taking the opposite position to successfully convince the Court to compel Wells Fargo to accept her postpetition payments?**

Here, it is fairly obvious that the Debtor is trying to play fast and loose with the Court in the Adversary Proceeding by taking the inconsistent position that Wells Fargo is not the proper party to assert the right to payment under the Note and Deed of Trust. Just one year ago, the Debtor filed a motion to compel Wells Fargo to accept her postpetition payments that became due under the Note and Deed of Trust (the "Payment Motion"),[37] which the Court ultimately granted (the "Payment Order").[38] In the Payment Motion, the Debtor unequivocally took the position that Wells Fargo was her secured creditor under the Note and Deed of Trust, with the Debtor even admitting in her signed declaration that "[t]he [Palo Alto property] is encumbered by a note secured by a first trust deed in favor of Wells Fargo Bank."[39] If the Debtor believes that Wells Fargo is not the proper party entitled to accept payments made on account of the Note and Deed of Trust and that Wells Fargo needs to return all of those payments received from the Debtor, then the Debtor would have never sought an order obligating Wells Fargo to accept those payments in the first place. But since she did, judicial estoppel now bars her from taking her

---

[35] Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1097 (9th Cir. 2009).

[36] Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).

[37] See Debtor's Mot. Compel Acceptance Mortg. Payment, ECF No. 56, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[38] See Order Granting Debtor's Mot. Compel Acceptance Mortg. Payment, ECF No. 73, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[39] Gens Decl. Supp. Debtor's Mot. Compel Acceptance Mortg. Payment ¶ 3 (emphasis added), ECF No. 56-1, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

**EXHIBIT 1 TO PHAM DECL.
PAGE 13**

current position. And the fact that the Debtor took such a definitive and affirmative position in the recent past means that the Court will not only apply judicial estoppel to bar the "loan-securitization" claim but the Court will also find such claim to be particularly baseless.

Additionally, Wells Fargo notes that counsel cannot plead ignorance about the Debtor's prior position or the existence of either the Payment Motion (filed on March 2, 2016) or the Payment Order (entered on April 26, 2016) due to counsel's late involvement in the Bankruptcy Case. Counsel was clearly aware of the Payment Motion and the Payment Order, as well as the contents therein, prior to the signing and filing of the Complaint on May 12, 2017, as both documents had been designated by counsel months earlier as part of the record on appeal.[40] Thus, counsel is just as accountable as the Debtor for asserting the frivolous "loan-securitization" claim that would clearly be barred by judicial estoppel.

### The Debtor's "Class-Action" and "Loan-Securitization" Claims Lack Evidentiary Support

In addition to the preclusion doctrines barring the Debtor from asserting her baseless claims against Wells Fargo, the Debtor also completely lacks any evidentiary support needed for the allegations underlying her "class-action" and "loan-securitization" claims.

**What evidentiary support will the Debtor have to substantiate her allegations that Wells Fargo violated or breached the class-action settlement agreement as to her?**

If the Debtor is going to allege that Wells Fargo breached the class-action settlement agreement by not modifying the Debtor's loan, counsel should consider carefully reading the agreement first. Under the agreement, Wells Fargo was only required to make a loan modification program available to certain members in Class B and all members in Class C from December 18, 2010, through June 30, 2013.[41] This program obligated Wells Fargo to only <u>consider</u> a class member for a loan modification <u>as long as</u> such member had applied (i.e., submitted the required documentation) for a loan modification.[42] The Debtor is completely off-base to allege that Wells Fargo had an unqualified "obligation to modify the onerous terms of the insidious pick-a-pay [sic] loan" under the settlement agreement.[43] Instead, Wells Fargo's obligation to modify the terms of a class member's loan only arose if the member applied for a loan modification and then qualified for a modification under the applicable standards.

Thus, for the Debtor to prove that Wells Fargo breached the class-action settlement agreement as to her, she will need to present evidence showing that she took the opportunity to apply for a loan modification offered under the agreement and that her application materials established her qualification for a modification. Yet, given the lack of allegations in the Complaint regarding any kind of loan modification application by the Debtor, it is doubtful that she has any evidence showing that she applied and qualified for a loan modification. In other

---

[40] <u>See</u> Appellant's Designation 3–4, ECF No. 191, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[41] <u>See</u> Agreement & Stip. of Settlement of Class Action 35, ECF No. 102, Case No. 5:09-md-02015 (N.D. Cal.).

[42] <u>See</u> <u>id.</u> at 35–36, 40.

[43] Debtor's Compl. ¶ 39.

**EXHIBIT 1 TO PHAM DECL.**
**PAGE 14**

words, the condition precedent to Wells Fargo's obligation to modify the Debtor's loan never arose, meaning that Wells Fargo could not be in breach of the class-action settlement agreement with respect to the Debtor.

Further, even if she had applied, not only will she need evidence showing that she qualified for a loan modification but she will also need to address why she did not previously refute Wells Fargo's evidence establishing her lack of qualification. Specifically, counsel is directed to a declaration filed by Wells Fargo in February 2012 during the Debtor's first bankruptcy case that addressed her plan's unilateral attempt to modify the terms of her loan based on her mistaken belief that the class-action settlement agreement "includes a restructuring of her mortgage with Wachovia/Wells Fargo."[44] In the declaration, a Wells Fargo representative listed a number of reasons why the Debtor did not qualify for a loan modification under the program established by the class-action settlement agreement, including the high amount of the loan, the insufficiency of her income, the existence of equity in the Palo Alto property, and her fraudulent misrepresentations in obtaining the loan.[45] Instead of contesting the statements made by Wells Fargo's declarant and arguing that she qualified for a modification, the Debtor chose to file a new plan that left the existing terms of the loan unaltered and that removed all references to the class-action settlement agreement.[46]

Because the Debtor has no evidence showing that she applied and qualified for a loan modification, the Debtor will have no evidentiary support that Wells Fargo breached the class-action settlement agreement as to her. Her "class-action" claim will then unequivocally fail on the merits, further establishing the frivolousness of her Complaint.

**How will the Debtor prevent the Court from excluding her proffered securitization report under Federal Rule of Evidence 702? And once the Court excludes that report, what evidentiary support will the Debtor have to substantiate her allegations that her loan was securitized and sold to the "WSR 27 Trust" in December 2006?**

Counsel's previously filed declaration in the Bankruptcy Case indicates that a so-called "securitization report" was relied upon in preparing the Complaint.[47] That 134-page report (the "Securitization Report" or "Report"), entitled "Mortgage Securitization Audit and Foreclosure Forensics," was apparently prepared by an individual named Lawrence M. Asuncion doing business as Certified Securitization Analysis ("CSA") and who identifies himself as a "chief forensic securitization audit and mortgage fraud analyst."[48] The Report seems to be the only

---

[44] See Debtor's Plan of Reorg. Dated Dec. 20, 2011, at 11:21–25, ECF No. 141, Case No. 5:10-bk-55305 (Bankr. N.D. Cal.).

[45] See Dolan Decl. Supp. Wells Fargo's Obj'n to Debtor's Disclosure Stmt., ECF No. 152, Case No. 5:10-bk-55305 (Bankr. N.D. Cal.).

[46] See Debtor's Combined Plan of Reorg. & Disclosure Stmt. Dated Mar. 16, 2012, at 2–3, ECF No. 169, Case No. 5:10-bk-55305 (Bankr. N.D. Cal.).

[47] See Naegele Decl. Supp. Debtor's Combined Opp'n ¶ 2, ECF No. 349-1, Case No. 5:15-bk-53562 (Bankr. N.D. Cal.).

[48] See Naegele Decl. Ex. 1, at 70.

**EXHIBIT 1 TO PHAM DECL.
PAGE 15**

evidentiary support that the Debtor has for her allegations underlying the "loan-securitization" claim, but the Report will never be admitted into evidence by the Court.

It appears that the Debtor will rely on Mr. Asuncion and the Securitization Report to provide an "expert" opinion on the issue of whether her loan was securitized and sold to the "WSR 27 Trust" in December 2006. However, the Securitization Report is nowhere close to being a legitimate report created by a qualified expert using a reliable methodology; rather, the Report reads more like the ramblings of a conspiracy theorist about the improprieties of the mortgage industry. As a result, if the Debtor attempts to offer the Securitization Report into evidence or present any "expert" testimony from Mr. Asuncion in the Adversary Proceeding, Wells Fargo will strenuously object and the Court will definitely exclude such evidence under Federal Rule of Evidence 702. The exclusion of that evidence will then leave the Debtor with no other evidence for her "loan-securitization" claim, resulting in the claim's failure on the merits.

On its face, the Securitization Report clearly lacks any kind of real substantive analysis or methodology to support the Debtor's securitization-related allegations. Once all of the irrelevant material is ignored (which is a majority of the Report), the Report's findings can be reduced to the following: Mr. Asuncion relies on the assumed facts that loans originated by World Savings Bank were sometimes securitized into mortgage-backed securities and that some of its loans that happen to share the same characteristics as the Debtor's loan were securitized in 2006 into the "WSR 27 Trust" to jump to the conclusion that the Debtor's loan must have been one of those loans securitized into the "WSR 27 Trust." It should be obvious to counsel why this "expert" opinion is so flawed and unreliable.

Indeed, Wells Fargo believes that it need not present much argument to convince the Court to exclude the Securitization Report and Mr. Asuncion's "expert" testimony. All that Wells Fargo has to do is refer the Court to a decision by the district court excluding the same testimony from the same "expert" on the same issue after finding that "Mr. Asuncion's background does not demonstrate expertise on any matter relevant to this case" and that "Mr. Asuncion's opinion is neither reached through reliable methodology nor based on sufficient facts and data."[49] In that decision, the district court listed the many problems with Mr. Asuncion's qualifications and approach and then ended its discussion with the following:

> The best way to phrase Mr. Asuncion's findings is this: he discovered that Wells Fargo securitized a large number of loans in 2006, many of which shared certain characteristics with Plaintiff's loan. That fact simply does not support a conclusion that Wells Fargo securitized Plaintiff's loan, much less a conclusion that Wells Fargo sacrificed any beneficial interest in the Loan . . . . Searching the records of a securitization agreement for loans with similar characteristics is not a

---

[49] Subramani v. Wells Fargo Bank, N.A., Case No. 13-cv-01605-SC, 2015 U.S. Dist. LEXIS 32216, at *13, 15 (N.D. Cal. Mar. 13, 2015).

**EXHIBIT 1 TO PHAM DECL.**
**PAGE 16**

reliable method of determining whether any particular given loan was sold as part of that agreement.[50]

Given that Mr. Asuncion uses the same "methodology" (if one can even call it that) to reach the same "expert" opinion in the Securitization Report, it is guaranteed that the Court will come to the same conclusion as the district court in <u>Subramani</u> and exclude the Report and his testimony.

Since the Debtor's allegations in the Complaint underlying her "loan-securitization" claim rely entirely on an illegitimate "expert" report that will surely be excluded, the Debtor will have no other evidentiary support to substantiate her allegations that her loan was securitized and sold to the "WSR 27 Trust," further adding to the frivolousness of the Complaint.

### The Debtor's "Loan-Securitization" Claim Will Fail on the Merits as a Matter of Law

And even if the Debtor had evidentiary support to show that her loan was, in fact, securitized (or the allegations in her Complaint are assumed to be true), the "loan-securitization" claim will nevertheless fail on the merits as a matter of law.

First, notwithstanding the alleged securitization, the Debtor has not alleged any facts to show that Wells Fargo is not entitled to collect her payments made on account of her loan. In particular, the Debtor has not alleged that any other entity has attempted to collect her payments or that she has made or has attempted to make payments to any other entity. Further, the Complaint alleges that Wells Fargo is the servicer of the Debtor's loan.[51] Thus, if Wells Fargo is entitled to collect payments from the Debtor, then the Debtor has no explanation for why Wells Fargo is not permitted to assert the right to payment under the Note and Deed of Trust.

Additionally, the Complaint admits that World Savings Bank was the original lender under the Note and Deed of Trust,[52] and that World Savings Bank was then succeeded by Wachovia Mortgage, who was then succeeded by Wells Fargo Bank,[53] and such admissions will be sufficient to establish Wells Fargo's right to payment under the Note and Deed of Trust. In particular, the latter admission is consistent with the judicially noticeable facts that effective December 31, 2007, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, and effective November 1, 2009, Wachovia Mortgage, FSB, merged into Wells Fargo Bank, N.A., through an intermediary entity named Wells Fargo Bank Southwest, N.A., that same day. Not only are these facts supported by judicially noticeable, publicly available documents, but courts have repeatedly found that such documents establish Wells Fargo's ownership of loans originally from World Savings Bank.[54]

---

[50] <u>Id.</u> at *15.

[51] <u>See</u> Debtor's Compl. ¶ 6.

[52] <u>See id.</u> ¶ 3.

[53] <u>See id.</u> ¶ 4.

[54] <u>See, e.g.</u>, <u>Taguinod v. World Sav. Bank, FSB</u>, 755 F. Supp. 2d 1064, 1068 (C.D. Cal. 2010); <u>Nguyen v. Wells Fargo Bank, N.A.</u>, 749 F. Supp. 2d 1022, 1024–25 (N.D. Cal. 2010); <u>Kennedy v. Wells Fargo Bank, N.A.</u>, Case

**EXHIBIT 1 TO PHAM DECL.
PAGE 17**

Furthermore, the Debtor's representation about the legal effect of securitization is patently wrong, and the Court will certainly join the many decisions that have rejected that same kind of representation made by other borrowers. In one decision, plaintiffs-borrowers alleged that the originating lender, World Savings Bank, securitized their loan through a REMIC and by doing so, divested itself of ownership of the promissory note and its beneficial interest in the deed of trust.[55] The borrowers then alleged that the REMIC was the owner of the note and only beneficiary under the deed of trust and that consequently, Wells Fargo had no authority to instruct the trustee to record a notice of default.[56] The district court disagreed, first finding that "[j]udicially noticeable documents reveal that the original lender, World Savings Bank, changed its name to Wachovia Mortgage, FSB, and is now a division of Wells Fargo Bank" and [t]herefore, Wells Fargo simply succeeded World Savings Bank's interest in the loan."[57] The court then observed that "[t]he argument that parties lose their interest in a loan when it is assigned to a trust pool or REMIC has been rejected by numerous courts,"[58] noting that "securitization of the loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust,"[59] "merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the relationship of the parties in any way"[60] As a result, the borrowers' argument was completely rejected.

Following the reasoning of that decision, World Savings Bank did not lose its interest in the Debtor's loan if it had, in fact, transferred the loan to the "WSR 27 Trust." Rather, World Savings Bank continued to hold its interest, with Wachovia Mortgage and then Wells Fargo succeeding to that interest following 2007 name change and 2009 merger, respectively. Thus, even if the Debtor could establish that her loan was securitized and sold, her "loan-securitization" claim will still fail on the merits as a matter of law.

### The Debtor's Complaint Fails to Comply with § 502(j) and Rule 3008

Additionally, to the extent that the Debtor is permitted to prosecute the Complaint as only an objection to Wells Fargo's claim, the Complaint is still substantively and procedurally deficient because the relief that the Debtor is actually seeking is reconsideration of Wells Fargo's allowed claim. And given these obvious deficiencies, the Court will find that the Debtor has presented the Complaint for an improper purpose.

---

No. C 11-0675 MMC, 2012 U.S. Dist. LEXIS 134939, at *2–4 & nn.2, 3 *N.D. Cal. Sept. 20, 2012); Wolf v. Wells Fargo Bank, N.A., Case No. C 11-01337 WHA, 2011 U.S. Dist. LEXIS 117835, at *3 (N.D. Cal. Oct. 12, 2011); Winding v. NDEX W., LLC, Case No. CV F 10-2026 AWI DLB, 2011 U.S. Dist. LEXIS 17702, at *23 (E.D. Cal. Feb. 23, 2011); Guerrero v. Wells Fargo Bank, N.A., Case No. CV 10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010).

[55] See Logvinov v. Wells Fargo Bank, Case No. C-11-04772 DMR, 2011 U.S. Dist. LEXIS 141988, at *6 (N.D. Cal. Dec. 9, 2011).

[56] See id.

[57] Id. at *7.

[58] Id. at *8 (citing cases).

[59] Id.

[60] Id. at *9.

**EXHIBIT 1 TO PHAM DECL.**
**PAGE 18**

**How can the Debtor argue that the substantive and procedural requirements for reconsideration of an allowed claim do not apply to the relief that she seeks?**

Since the Debtor is attempting to object to Wells Fargo's claim following the Court's order overruling her prior claim objections and allowing Wells Fargo's claim, this new litigation against Wells Fargo is more appropriately characterized as the Debtor's request for reconsideration of Wells Fargo's claim, rather than an objection to Wells Fargo's claim. In fact, in a filing in the appeal, the Debtor, characterized the filing of the Complaint as seeking reconsideration:

> Moreover, the bankruptcy court has the express authority to reconsider previously denied objections to claim under 11 U.S.C. § 502(j) and Federal Rule of Bankruptcy Procedure ("FRBP") 3008. Reconsideration is proper if the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. Reconsideration is also proper to prevent manifest injustice, such as where a party has been misunderstood.

> Here, there is clearly a case for reconsideration as Wells Fargo is in direct violation of an order of this Court, both as to Laura Gens and as to other victims of Wells Fargo. Reconsideration is necessary to prevent manifest injustice.[61]

Thus, there will be no dispute that the Adversary Proceeding represents the Debtor's attempt to have the Court reconsider Wells Fargo's allowed claim, and as acknowledged by the Debtor above, such request for reconsideration will be governed by § 502(j) of the Code and Rule 3008. However, by only filing the Complaint, the Debtor has failed to comply with the applicable substantive and procedural requirements.

Seeking reconsideration of an allowed claim under § 502(j) and Rule 3008 is not the same as objecting to a claim in the first instance under § 502(b) and Rule 3007, where the court is obligated to adjudicate the claim objection once it has been made.[62] Instead, the party requesting reconsideration must overcome multiple hurdles before the merits of the previously allowed claim can even be re-adjudicated.

The party requesting reconsideration must establish and the court must find cause before an allowed claim may be reconsidered.[63] And where reconsideration is being sought after the expiration of the 14-day period to appeal the original order allowing the claim, whether cause exists will be informed by the grounds for reconsideration under Civil Rule 60(b), as incorporated by Bankruptcy Rule 9024.[64] But even if the requesting party is able to show cause,

---

[61] Debtor's Reply Mem. Supp. Stay Mot. 9:6–10:1 (citations omitted), ECF No. 28, Case No. 5:17-cv-01001 (N.D. Cal.).

[62] See 11 U.S.C. § 502(b) ("[I]f such objection to a claim is made, the court . . . shall determine the amount of such claim . . . and shall allow such claim in such amount." (emphasis added)).

[63] See id. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause.").

[64] See United Student Funds, Inc. v. Wylie (In re Wylie), 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006); S.G. Wilson Co. v. Cleanmaster Indus., Inc. (In re Cleanmaster Indus., Inc.), 106 B.R. 628, 630 (B.A.P. 9th Cir. 1989).

**EXHIBIT 1 TO PHAM DECL.
PAGE 19**

the party must still convince the court to exercise its discretion to reconsider the allowed claim.[65] Then, if the court decides to reconsider and re-adjudicate the merits of the allowed claim, the requesting party must then convince the court that the equities of the case favor the court, again, exercising its discretion to enter an order differing from its original order allowing the claim.[66]

Unlike a claim objection, a request to reconsider an allowed claim does not automatically obligate the court to adjudicate the merits of that claim. That is why the requesting party "moves for reconsideration of an order allowing . . . a claim" (i.e., files a motion for reconsideration),[67] which not only provides an opportunity for the adverse party to oppose any arguments or evidence in support of finding cause for reconsideration but also for the court to exercise its discretion to deny reconsideration.

Here, however, rather than follow the requisite procedure by first presenting a motion for reconsideration to the Court, the Debtor went ahead and filed her Complaint seeking to immediately re-adjudicate the merits of Wells Fargo's allowed claim. By doing so, the Debtor is attempting to effectively (1) relieve herself of the burden to establish that cause for reconsideration exists under § 502(j) and Civil Rule 60(b), including presenting sufficient evidence on the issue, (2) eliminate Wells Fargo's opportunity to oppose the sufficiency of any cause asserted and force Wells Fargo to directly re-litigate the merits of its allowed claim, and (3) disregard the Court's discretion not to reconsider Wells Fargo's claim. This attempt to circumvent the substantive and procedural requirements for reconsideration establishes that the Complaint has been filed for an improper purpose.

### The Debtor's Complaint Includes Other False Factual and Legal Contentions

Wells Fargo lastly points out the following factual or legal contentions in the Complaint that are so obviously false that further supports finding the Complaint to be frivolous.

First, in support of the "class-action" claim, the Complaint wrongly states that "[the Debtor] was never notified of the class action or of the settlement and the benefits to which she is entitled thereunder."[68] Counsel knows such allegation to be false given that Wells Fargo has more recently referenced one of the Debtor's filings in her first bankruptcy case where she mentioned (and therefore acknowledged the existence of) the class-action settlement agreement.[69] Further, if counsel had performed just a cursory investigation of the Debtor's

---

[65] See 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause." (emphasis added)); Fed R. Bankr. P. 3008 advisory committee note (1983) ("Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court." (emphasis added)).

[66] See 11 U.S.C. § 502(j) ("A reconsidered claim may be allowed or disallowed according to the equities of the case." (emphasis added)); Fed R. Bankr. P. 3008 advisory committee note (1983) ("After reconsideration, the court may allow or disallow the claim, increase or decrease the amount of a prior allowance, accord the claim a priority different from that originally assigned it, or enter any other appropriate order." (emphasis added)).

[67] Fed. R. Bankr. P. 3008 (emphasis added).

[68] Debtor's Compl. ¶ 39.

[69] See Wells Fargo's Opp'n to Debtor's Stay Mot. 16 n.6, ECF No. 21, Case No. 5:17-cv-01001-BLF (N.D. Cal.).

**EXHIBIT 1 TO PHAM DECL.**
**PAGE 20**

publicly available filings in that bankruptcy case, counsel would have realized that not only did the Debtor know of the class-action settlement agreement but that she acknowledged receiving a benefit under the agreement. Specifically, in December 2011, the Debtor filed a plan that made the following admission:

> Debtor is a member of a class action suit against Wachovia/Wells Fargo. The action is pending in the District Court for Northern California [sic], San Jose Division, Case No. M:09-CV-2015-JF. <u>Debtor has received a cash settlement from the Pick-A-Payment Settlement Administrator.</u>[70]

Thus, the allegation in the Complaint is not only factually baseless but is also inconsistent with a prior admission made by the Debtor, which is just another reason for the Court to find the Complaint to be frivolous.

Second, the Complaint alleges that "the Subject Property [the Palo Alto property] is not part of the bankruptcy estate and the Property may not be sold to satisfy the claims of the unsecured creditors and to pay administrative expenses."[71] This contention is so unmistakably incorrect that Wells Fargo has no need to explain why this contention is baseless.

Based on the foregoing, Wells Fargo implores the Debtor and counsel to withdraw the Complaint and dismiss the Adversary Proceeding by close of business on **Monday, June 26, 2017**. Absent timely confirmation of such action, Wells Fargo will then serve its Rule 9011 motion on counsel, as well as file and serve its motion for sanctions under the Court's inherent authority. **Wells Fargo specifically notes that counsel's liability for signing and filing the Complaint in violation of Rule 9011 will <u>not</u> be excused by counsel's withdrawal from representing the Debtor in the Adversary Proceeding as the Complaint would still remain on file. Counsel's liability will only be excused if the Complaint is withdrawn and the Adversary Proceeding is dismissed.**

Wells Fargo also notes that to the extent the Debtor, in the Adversary Proceeding, forces Wells Fargo to incur further fees in defending its rights established under the Note and Deed of Trust, Wells Fargo will seek to recover those fees provided for under the Note and Deed of Trust <u>in addition or as an alternative</u> to pursuing the sanctions discussed in this letter. And if Wells Fargo is unable to recoup the entirety of its incurred fees from the proceeds (of the sale of the Palo Alto property) to which Wells Fargo's lien attaches, Wells Fargo will pursue its claim for attorney's fees against the Debtor and request that the Court determine such claim to be a postpetition claim that will not be discharged under Ninth Circuit precedent established by <u>Siegel v. Federal Home Loan Mortgage Corp.</u>,[72] and <u>Boeing North American, Inc. v. Ybarra (In re Ybarra)</u>.[73] Under that line of cases, the Ninth Circuit allows for a court to make that

---

[70] Debtor's Plan of Reorg. Dated Dec. 20, 2011, at 11:12–15 (emphasis added), ECF No. 141, Case No. 5:10-bk-55305 (Bankr. N.D. Cal.).

[71] Debtor's Compl. ¶ 32.

[72] 143 F.3d 525 (9th Cir. 1998).

[73] 424 F.3d 1018 (9th Cir. 2005).

**EXHIBIT 1 TO PHAM DECL.
PAGE 21**

determination where, "post-petition, the debtor voluntarily 'pursued a whole new course of litigation,' commenced litigation, or 'returned to the fray' voluntarily,"[74] and the Adversary Proceeding clearly fits the bill.

Given that the Court has already allowed all of Wells Fargo's requested prepetition fees as part of its claim and granted both of Wells Fargo's § 506(b) motions for postpetition fees in the Bankruptcy Case, as well as recently awarded the Trustee her attorney's fees in connection with the Debtor's improper filing of the lis pendens, Wells Fargo is confident that the Court will not hesitate to award further attorney's fees to Wells Fargo's based on the frivolousness of the Debtor's Complaint.

Respectfully,

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

Dean G. Rallis Jr.

DGR:MDP

---

[74] Id. at 1024 (quoting Siegel, 143 F.3d at 533–34).

**EXHIBIT 1 TO PHAM DECL.
PAGE 22**

# EXHIBIT 2

**Matthew Pham**

| | |
|---|---|
| **From:** | Receptionist TY <receptionist@tsaoyee.com> |
| **Sent:** | Monday, June 26, 2017 1:23 PM |
| **To:** | Matthew Pham |
| **Cc:** | Nancy Weng |
| **Subject:** | Gens v Well Fargo Bank A/P |
| **Attachments:** | 2017-06-26 Nancy's letter (3).pdf |
| | |
| **Categories:** | Red Category |

Dear Mr. Pham

      Please disregard my previous letter and  review  the this attachment instead.

Thank you. 🌼
Sherri Li
Receptionist
receptionist@tsaoyee.com

Tsao-Wu & Yee LLP
曹吴余律师楼
4215 Geary Blvd, San Francisco, CA 94118
Tel: (415) 777-1688
Fax: (415) 777-2298
www.tsaoyee.com

This electronic message transmission contains information from the law firm of Tsao-Wu, Chow & Yee LLP which may be confidential and legally privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be aware that any disclosure, copying, distribution or use of the contents of this information is strictly prohibited. If you have received this electronic transmission in error, please notify us by calling (415) 777-1688 or electronic mail at info@tsaochow.com immediately, and delete or destroy all copies of this transmission.  Thank you.

**EXHIBIT 2 TO PHAM DECL.
PAGE 23**

# TSAO-WU & YEE LLP

ATTORNEYS AT LAW

4215 GEARY BOULEVARD
SAN FRANCISCO, CALIFORNIA 94118
TELEPHONE (415) 777-1688
FACSIMILE (415) 777-2298

June 26, 2017

VIA EMAIL

Dean G. Rallis Jr.
Anglin Flewelling Rasmussen Campbell & Trytten
301 N. Lake Ave., Suite 1100
Pasadena, CA 91101-4158

Re:  *Gens v. Wells Fargo Bank, N.A.*, A.P. Case No. 15-05045 SLJ

Dear Mr. Rallis:

This responds to your letter sent on June 22, 2017. providing Laura Gens an "informal notice of its intent to seek sanctions" against Ms. Gens, her counsel and her counsel personally unless Ms. Gens and her counsel "withdraw the Complaint and dismiss the Adversary Proceeding by close of business on Monday, June 26, 2017."

Wells Fargo Bank, N.A.'s ("Wells Fargo") suggestion that Mr. Naegele and I did not conduct adequate pre-suit investigation prior to asserting claims for relief against Wells Fargo related to its securitization and lien rights against the Gens' residence lack merit.  To the contrary, it appears that it is your firm and Wells Fargo that failed to conduct a reasonable investigation before drafting your 18-page letter threatening Rule 11 sanctions within two business days.  Wells Fargo appears to omit law that undercuts its positions and ignore its own public documents that are replete with admissions contrary to the foundations of its motion.  As you may be aware, Rule 11 cuts both ways.  "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing legal or factual theories."  *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987).  "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

We understand that, as in most adversary proceedings to determine the nature and extent of a bank's lien, you clients plan to advance a claim interpretation that differs from that of the Debtor.  While we can agree to disagree on whether Wells Fargo has a valid lien and to the extent that lien exists (and what the amount of that claim actually is), we cannot agree that such differences serve as a basis for a Rule 11 motion.  If you proceed with a Rule 11 motion, this letter serves as informal notice that you and Wells Fargo will be in violation of Rule 11.  Finally, Wells Fargo's letter makes reference to the "frivolousness" of the Ms. Gens' complaint under arguments suggesting that the Ms. Gens' expert report will be excluded by the Court and will "never be admitted into evidence by the Court."  Such argument at this stage in the Adversary Complaint process is presumptuous, and under these circumstances, we understand why Wells Fargo is grasping at straws.  But desperation is no basis for a frivolous Rule 11 motion.

EXHIBIT 2 TO PHAM DECL.
PAGE 24

June 26, 2017
Page 2

Sincerely,

Nancy Weng

**EXHIBIT 2 TO PHAM DECL.**
**PAGE 25**

1

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 301 N. Lake Ave., Suite 1100, Pasadena, California 91101.

On the date below, I served the within following document(s) entitled:

**WELLS FARGO'S OPPOSITION TO DEBTOR'S EX PARTE MOTION TO EXTEND TIME FOR HEARING ON WELLS FARGO'S MOTION FOR SANCTIONS; DECLARATION OF MATTHEW D. PHAM**

on all interested parties in said case addressed as follows:

*Served Electronically Via The Court's CM/ECF System*

*Attorneys for Debtor-Plaintiff Laura Gens:*

Nancy Weng, Esq.
Tsao-Wu & Yee, LLP
31 N. 2nd Street, Suite 260
San Jose, California 95113
Tel.: (415) 777-1688
Fax: (415) 777-2298
Email: nweng@tsaoyee.com;
steve.kolkey@gmail.com

*Served By Means Other than Electronically Via the Court's CM/ECF System*

*Chambers Copies To The Honorable Stephen L. Johnson:*

Anna Lee, Courtroom Deputy
United States Bankruptcy Court
Northern District of California
280 S. First St., Room 3035
San Jose, California 95113-3099
Tel.: (408) 278-7515

☒　I have arranged for the above-referenced document(s) to be personally delivered within 24 hours, with instructions to bill sender on the label.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on October 12, 2017.

| Marianne Mantoen | */s/ Marianne Mantoen* |
| --- | --- |
| (Type or Print Name) | (Signature of Declarant) |